**James Edward PATE, Plaintiff-Appellant,**

v.

**Steve SMITH, Warden of Kentucky State Reformatory; Attorney General of the Commonwealth of Kentucky, Defendants-Appellees.**

No. 80–3231.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1980.

Decided and Filed Jan. 9, 1981.

William M. Radigan, Asst. Public Defender, Frankfort, Ky., for plaintiff-appellant.

Steven Beshear, Atty. Gen. of Kentucky, Martin Glazer, Asst. Atty. Gen., Frankfort, Ky., for defendants-appellees.

Before LIVELY and KEITH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

LIVELY, Circuit Judge.

In this appeal from denial of a petition for writ of habeas corpus the question for decision is whether the state court judge who presided at petitioner's murder trial was required to conduct a competency hearing. We adopt the following statement of facts from the district court's memorandum:

> The petitioner was indicted in the Daviess Circuit Court in Owensboro, Kentucky, for the offense of the murder of his former wife, and was convicted and sentenced by the jury to life imprisonment. Final judgment was entered on February 7, 1978, and Notice of Appeal to the Supreme Court of Kentucky was filed.
>
> On March 20, 1979, the Supreme Court of Kentucky affirmed the petitioner's conviction. A petition for writ of certiorari was filed with the Supreme Court of the United States on June 18, 1979, and on October 1, 1979, the Supreme Court of the United States denied the petitioner's writ of certiorari, with two Justices dissenting.
>
> Before trial in the Daviess Circuit Court the petitioner's counsel moved to have the petitioner examined by a psychiatrist. The trial court granted this motion and ordered petitioner sent to the Forensic Psychiatry Unit at River Region

Hospital in Louisville, Kentucky. The Unit sent back a report, but the report was not included in the original record before the Kentucky Supreme Court.

> Thereafter, a motion was made to supplement the record to show the medical report from the Forensic Unit. The Kentucky Supreme Court granted that motion, and in a supplemental hearing the trial judge testified that he personally knew petitioner for twenty years and that he did consider the medical report from the psychiatric unit. No hearing was ever conducted to determine whether the petitioner was competent to stand trial.
>
> At trial the evidence indicated the petitioner shot and killed his former wife on the front porch of her home. Immediately after the shooting the petitioner walked, like nothing had happened, to his car and drove to his mother's house which was located on an adjacent street. The police, who were called to the scene of the shooting, located and approached the petitioner, who was still carrying the gun used in the shooting. After some discussion with the police officers, the petitioner surrendered to the police. The detective who arrested the petitioner described him as being wild drunk—". . . he didn't want to listen to reason at the time I approached him." Another police officer, a member of the Owensboro Police Department, at the scene of the arrest, agreed that the petitioner was highly intoxicated.
>
> Dr. Bryan Warren, a psychiatrist with the Green River Comprehensive Care Center in Owensboro, testified the petitioner had been under his care and treatment from March 1977 to August 1977. Dr. Warren explained the petitioner suffered from brain damage, possibly a tumor, which was the result of a head injury some years previously. The doctor stated this condition would not affect the petitioner's sanity; however, any severe change in the psysiology of his brain would make the petitioner legally insane. If the petitioner had been drinking on the

day of the alleged crime, Dr. Warren was of the opinion "... that he did not have the capacity to appreciate the nature of his act." Further, the witness advised the Court that the petitioner had been hospitalized in mental institutions on four or five occasions.

During the trial, while the questioning of the psychiatrist was continuing, petitioner sought to ask a question and his counsel told him to be quiet. At that point, the record indicates the petitioner caused a disturbance and had to be removed from the courtroom. The petitioner remained out of the courtroom the rest of that day, although the record is silent, he apparently was allowed to resume his place in the courtroom on the following day.

At the subsequent hearing on the Commonwealth's motion to supplement the record on appeal with the report on the petitioner prepared by the Forensic Psychiatry Unit, the trial judge testified, that prior to the petitioner's trial he had considered a forensic report which had been submitted by Dr. James G. Bland, Director of Forensic Psychiatry of Louisville, Kentucky. This report indicated the petitioner was competent to stand trial. After the incident during the trial when the petitioner became violent and had to be removed by deputy sheriffs, the trial judge consulted the Kentucky Rules of Criminal Procedure concerning the trial judge's obligation in regard to competency to stand trial. On the basis of Dr. Bland's report and because the trial judge had known the petitioner for twenty years, the trial judge decided to go ahead with the trial. The psychiatric report was never entered into the record, and the petitioner's counsel was never advised that the trial judge had consulted the report.

Kentucky Criminal Rule 8.06 provides: "If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant is insane, the proceedings shall be postponed and the issue of sanity determined as provided by law. If the defendant is found to be insane, the court shall direct that he be confined in a mental institution until his mind is restored, at which time he shall be returned to the court for further proceedings."

The issue to be decided, however, is whether the trial court had reasonable grounds to believe that the petitioner was insane at the time of his trial or could not comprehend the nature and consequences of the proceedings or to participate rationally in his defense. Defense counsel made no motion for a competency hearing, and we are left to determine whether the Court, sua sponte, is required to conduct a competency hearing.

The post-trial hearing referred to in the memorandum was held on motion of the prosecution to supplement the record. Its purpose was not to determine whether petitioner was competent to stand trial at the time of trial, and no finding was made on this question. In his brief before the Supreme Court of Kentucky the petitioner contended that the circumstances surrounding the trial were such as to require the trial judge, acting sua sponte, to hold a hearing on his competence to stand trial. The Kentucky Supreme Court held that this claim was without merit. The district court agreed, distinguishing two decisions of the Supreme Court of the United States—Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

In Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the Supreme Court agreed with the Solicitor General that the test of a defendant's competence to stand trial on a criminal charge "must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." The test as stated by the Kentucky courts is similar—"whether he has substantial capacity to compre-

hend the nature and consequences of the proceeding pending against him and to participate rationally in his defense." *Commonwealth v. Strickland,* 375 S.W.2d 701, 703 (Ky.1964) (citations omitted). It is a violation of due process to convict a person who lacks such competence at the time of trial.

In *Pate v. Robinson, supra,* the Supreme Court held that where there is substantial evidence of a defendant's incompetence at the time of trial a trial judge has the duty to order a hearing *sua sponte.* Failure of a court to make this inquiry deprives a defendant "of his constitutional right to a fair trial." 383 U.S. at 385, 86 S.Ct. at 842 (footnote omitted). In *Drope v. Missouri, supra,* the Court concluded that information available to the court prior to trial together with testimony during the trial and information concerning an attempted suicide by the defendant during trial "created a sufficient doubt of his competence to stand trial to require further inquiry on the question." 420 U.S. at 180, 95 S.Ct. at 908. The Court defined the scope of the inquiry:

> The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Id.*

The district court correctly found that the facts in the instant case differ in many respects from those which were present in *Pate v. Robinson* and *Drope v. Missouri.* Nevertheless, we believe the circumstances here were such as to create doubt sufficient to require a hearing. A number of facts appear in the record which cast doubt on the competence of James Edward Pate. The trial court found "reasonable grounds" to believe Pate was mentally incompetent or insane at the time it ordered a psychiatric evaluation on September 22, 1977. That evaluation took place between October 3 and October 24, 1977. Though the forensic psychiatrist, Dr. James Bland, concluded that Pate was competent to stand trial, his report noted that Pate had been admitted to a state mental hospital eight times in the past. Further, a psychiatrist who had treated Pate from March to August 1977 (the trial occurred in January 1978) testified that Pate suffered from brain damage, possibly a tumor, and that severe emotion, alcohol, failure to take his medicine, or a concussion could render him insane. This witness, Dr. Bryan Warren, testified concerning Pate's sanity at the time of the killing (September 14, 1977) and was not asked about his competence to stand trial. However, it was while Dr. Warren was testifying that the defendant created a disturbance and was removed from the courtroom by three deputies. It is not clear from the record what the exact nature of the disturbance was or whether pate returned to the courtroom before completion of the trial. It is not claimed that Pate's removal was improper. Nevertheless, removal did deprive the trial court of further opportunity to observe Pate's actions and demeanor. As the Supreme Court pointed out in *Drope v. Missouri,* "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." 420 U.S. at 181, 95 S.Ct. at 908.

This court held in *Conner v. Wingo,* 429 F.2d 630 (6th Cir. 1970), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 121 (1972), that a state trial court was not required to hold a hearing, *sua sponte,* on the competence of the defendant. The problems of Conner were similar in many respects to those of James Edward Pate.

Conner had a long history of hospitalizations for psychiatric care and his condition was much worse when he was drinking. Events at the two trials were different, however. Though Conner attempted suicide while awaiting trial, there were no outbursts or other indications of an inability to cooperate with counsel. While Conner stared into space during the trial, a psychiatrist testified that his demeanor at trial did not indicate insanity, and his attorney testified at a post-conviction hearing that Conner's blank stares were part of an effort to bolster his defense of insanity. It is also significant that *Conner v. Wingo* was decided before the Supreme Court delineated in *Drope v. Missouri* the "import" of its decision in *Pate v. Robinson*. Finally, the court in *Conner v. Wingo*, concluded that even if a competency hearing were required, this obligation was satisfied by a post-conviction hearing where evidence derived from knowledge contemporaneous to the trial was heard in determining the issue of competence at trial. 429 F.2d at 637.

In *Bowers v. Battles*, 568 F.2d 1 (6th Cir. 1977), the respondent conceded that there were sufficient grounds to doubt the petitioner's competence to stand trial, but contended that a post-conviction evidentiary hearing had cured the failure to hold one at the time of trial. After considering the record of the post-conviction hearing this court agreed because the state court had relied upon evidence derived from knowledge contemporaneous to the time of trial in determining the defendant's competence at the time of trial. 568 F.2d at 4. On this basis the denial of habeas corpus relief was affirmed. In *Osborne v. Thompson*, 610 F.2d 461 (6th Cir. 1979), this court affirmed a district court judgment granting habeas relief where there had been no hearing on the petitioner's competence to stand trial. We also agreed with the district court's determination that a competency hearing more than four years after the trial would not satisfy the requirements of due process.

■ In *De Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977), the court considered the scope of review in cases such as this and concluded, "The question to be asked by the reviewing court is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." The record before us strongly indicates that the trial judge did, in fact, entertain doubt about the competence of James Edward Pate to stand trial. However, he resolved that doubt by consulting the report of the forensic psychiatrist and considering his own long acquaintance with the defendant. The report had never been made part of the record and the judge made no statement on the record of his findings. This procedure did not comply with the requirements of due process. A hearing produces a record and offers the defendant an opportunity to cross-examine and to introduce evidence. Once a reasonable doubt arises as to the competence of a person to stand trial, the issue must be decided on the basis of a hearing.

■ The remaining question is whether a retrospective hearing may be held now to determine whether the petitioner was competent to stand trial in January 1978. It is firmly established in this circuit that a retrospective determination may satisfy the requirements of due process if it is based on evidence related to observations made or knowledge possessed at the time of trial. *Conner v. Wingo, supra; Bowers v. Battles, supra; see also, United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975). The present case appears to be one particularly susceptible of determination on the basis of contemporaneous evidence. In addition to testimony of the Commonwealth's attorney, defense counsel and the trial judge, there should be available the testimony of Dr. Warren, the psychiatrist who was testifying at the very time of the disturbance which resulted in Pate's being removed from the courtroom. There may be other witnesses—qualified observers at the trial or the forensic psychiatrist who examined Pate in October 1977, for exam-

ple—whom one party or the other will want to call.

Rather than granting the writ on this record, we will remand for further proceedings. The Commonwealth of Kentucky must either conduct the hearing we have prescribed or grant the petitioner a new trial. If a hearing is held and the judge who conducts it (a jury is not required, *Commonwealth v. Strickland, supra,* 375 S.W.2d at 703) concludes either that Pate was not competent to stand trial in January 1978 or that the evidence is not sufficient to make a retrospective determination of his competence at that time, a new trial must be granted. If a new trial is granted, in the event of reasonable doubt as to Pate's competence to stand trial at the scheduled time, a competency hearing must be held at that time.

If the state court concludes following a hearing that James Edward Pate was competent to stand trial at the time of his conviction, this determination is subject to review under federal habeas corpus standards. Thus, the district court will retain jurisdiction pending a decision by the state court. In the event the Commonwealth does not provide a competency hearing within a reasonable time, the district court will issue the writ of habeas corpus conditioned upon the grant of a new trial. *See United States ex rel. McGough v. Hewitt, supra,* 528 F.2d at 344.

The judgment of the district court is reversed and the cause is remanded for further proceedings in accordance with this opinion.