865 F.2d 256
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Chauncey Gomez BALDWIN, Petitioner-Appellant,
v.
Gene SCROGGY, Warden, Respondent-Appellee.
 No. 88-5028.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1988.
 
 Before LIVELY, RYAN and ALAN E. NORRIS, Circuit Judges.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Chauncey Gomez Baldwin appeals from a district court order dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. On appeal, we consider whether the trial judge had a duty to sua sponte order a competency hearing prior to trial, and whether admission of petitioner's post-arrest, post-Miranda warning request for counsel constituted harmless error.
 
 I.
 
 2
 Petitioner was convicted in the Lyon Circuit Court, Kentucky, of murdering a fellow inmate at the Kentucky State Penitentiary. Events leading to his conviction are pertinent and will be briefly described.
 
 
 3
 Four days after indictment, the trial judge concluded that petitioner was not mentally competent to enter a plea, and entered a not guilty plea on his behalf. In an attempt to determine whether he was competent to stand trial, petitioner was transferred to the Central State Hospital Forensic Unit in Louisville for a psychiatric examination. It was the opinion of Henry Davis, Ph.D., a consulting psychologist, that petitioner suffered from paranoid schizophrenia, that his condition was in partial remission, and that it could be controlled through medication. Shortly thereafter, psychiatrist Dr. James Adams examined petitioner and agreed with Dr. Davis' conclusion. Twelve days later, the court ordered Dr. Adams to perform another examination. Dr. Adams continued to believe that petitioner suffered from paranoid schizophrenia, and that the condition remained in remission. Dr. Adams concluded that petitioner was "able to assist counsel and understand the nature of charges that are pending against him." A subsequent re-examination by Dr. Davis corroborated his earlier evaluation and those of Dr. Adams.
 
 
 4
 Several months later, the prosecution asked Dr. Adams to again evaluate petitioner and determine whether he was competent to stand trial. Dr. Adams re-examined petitioner and concluded that he "is well aware of his environment as well as charges pending in terms of his murder of another resident at the institution and in the examiner's opinion, he has adequate capacity to assist counsel, plea bargain and appreciate his presence in a court of law."
 
 
 5
 One year later, and prior to trial, petitioner decided to claim insanity as a defense, as prescribed by Ky.Rev.Stat.Ann. Sec. 504.020 (Baldwin 1984),[1] and counsel served notice of petitioner's intent. Pursuant to court order, petitioner was again examined, this time by Phillip Johnson, Ph.D., a psychologist. Agreeing with the opinions of Drs. Adams and Davis, Dr. Johnson concluded that petitioner was suffering from paranoid schizophrenia, but that his "current psychological condition does not prohibit him from actively and constructively participating in the legal process."
 
 
 6
 Two months before trial, the prosecution requested that petitioner be recommitted for further psychiatric evaluation "[i]n order that the court and the attorneys involved may be fully aware of his mental condition at the time of trial, and to assure that he remains on medication." That request was granted and, eight days before trial, Dr. Johnson wrote a letter to the court stating that petitioner's psychological condition had not significantly changed since his prior evaluation.
 
 
 7
 The day before trial, petitioner's counsel moved to withdraw because of an alleged breakdown in the attorney-client relationship. On the morning of trial, a hearing was held on that motion and the following colloquy concerning petitioner's competency occurred:
 
 
 8
 [Trial Judge]: You have not asked for a hearing to determine his [competency] have you?
 
 
 9
 [Counsel]: Judge I hadn't but in view of some of the things that have been said today and recently I have that question in my own mind. Throughout my representation I have had difficulty in explaining to [petitioner] what I consider to be the issues, the relevant issues in this case and he in turn has had difficulties in understanding my explanation of those and through all this evidence that has been explained and how he fits into that.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 [Trial Judge]: I wish we had a written request before today. The reports that I have in the record say he is [competent] to stand trial.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 [Counsel]: Judge a written motion may have been better but my position is that I just have my doubts about it because of our conversations, those doubts rise and fall with the different flows of his conversations. I would think instead of having a full blown hearing Judge it would be very simple and not to [sic] time consuming for the court to make a simple inquiry, himself.
 
 
 16
 [Trial Judge]: I have reports in here and unless you are prepared to rebut it I don't think we need to have a hearing.
 
 
 17
 [Counsel]: Your Honor I cannot rebut it but I just say to the Court I have my doubts about it.
 
 
 18
 Counsel's motion to withdraw was denied.
 
 
 19
 Trial was commenced and petitioner called Robert Meyer, Ph.D., as an expert witness to testify with respect to his sanity at the time of the murder. Dr. Meyer testified that petitioner could understand the difference between right and wrong at the time of the murder; however, based upon admittedly mixed evidence, he leaned toward the view that petitioner could not conform his behavior to the law or resist impulse at the time of the murder.[2] The prosecution called Dr. Johnson for rebuttal; he agreed that petitioner could comprehend the difference between right and wrong but also concluded that he was capable of conforming his conduct to the requirements of the law at the time of the murder. Dr. Johnson based his conclusion on four rationale.[3] One of those rationale was introduced over objection when Dr. Johnson read excerpts from a police report indicating that an officer had attempted to question petitioner and that he would make no statement until he consulted an attorney. Based upon the police report, Dr. Johnson concluded that petitioner "certainly appreciated the legal jeopardy that he might well be in at that particular moment [and] demonstrate[d] at least some amount of reasonable logical behavior in this particular situation." In closing argument, the prosecution stated that Dr. Johnson's opinion regarding petitioner's sanity at the time of the attack was based upon the "policeman-at-the-elbow rule" and "two or three other reasons."
 
 
 20
 The jury rejected petitioner's insanity defense and convicted him of murder. The Kentucky Supreme Court affirmed petitioner's conviction. Having exhausted available state remedies, petitioner filed a petition under 28 U.S.C. Sec. 2254 for a writ of habeas corpus. The district court accepted a magistrate's recommendation that the petition be dismissed, and this appeal followed.
 
 II.
 
 21
 We first consider whether the trial court committed error by failing to sua sponte order a competency hearing. A person accused of a crime who lacks the mental capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be placed on trial. Drope v. Missouri, 420 U.S. 162, 171 (1975). The relevant inquiry is whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceeding against him." Dusky v. United States, 362 U.S. 402 (1960). This court has noted that "[o]nce a reasonable doubt arises as to the competence of a person to stand trial, the issue must be decided on the basis of a hearing." Pate v. Smith, 637 F.2d 1068, 1072 (6th Cir.1981). While there is no fixed test to be applied, the Supreme Court has provided some guidance for determining when a hearing is required:
 
 
 22
 [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but [any] one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.
 
 
 23
 Drope, 420 U.S. at 180. Considering these kinds of factors, if there is substantial evidence that a defendant is incompetent at the time of trial, the trial judge has a duty to order a hearing sua sponte. Smith, 637 F.2d at 1071 (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)). On review, our duty is to determine "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." Smith, 637 F.2d at 1072 (quoting DeKaplany v. Enomoto, 540 F.2d 975, 983 (9th Cir.1976), cert. denied, 429 U.S. 1075 (1977)); Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir.), cert. denied, 461 U.S. 916 (1983).
 
 
 24
 After the hearing on counsel's motion to withdraw, the trial judge observed that:
 
 
 25
 We just had a hearing here and [petitioner] is rational and knows enough about the judicial system to try to postpone his case by firing his attorney. Unless there is some, I have heard him make statements here this morning, he appears to be a normal person to me, unless you have some psychiatric evidence I'm going to hold that he is [competent] to stand trial based upon the evidence in the record and the reports before me by Dr. Johnson and all the other statements. The report is dated October 3, 1983, some eight days ago. Unless there is other evidence you want me to consider my finding is going to be he is [competent].
 
 
 26
 There is nothing in the record from which we could conclude that either the trial judge's evaluation of petitioner, or his view of the events of that day, were unreasonable. The trial judge had an opportunity to personally observe petitioner's demeanor before trial and found him to be rational and normal. Those observations are entitled to great deference. See, e.g., Maggio v. Fulford, 462 U.S. 111, 118 (1983). He had before him numerous uncontradicted reports establishing petitioner's competence to stand trial, the most recent being dated only eight days prior to trial. Counsel was provided an opportunity to present evidence to contradict those conclusions, but stated that he had no such evidence. Accordingly, the trial judge's determination, that petitioner was competent to stand trial, was clearly supported by the expert opinion evidence--and the absence of the opinions of experts to the contrary.
 
 
 27
 It is urged that petitioner's attempt to fire his attorney was irrational and demonstrated his mental incompetence. However, as the trial judge observed, such attempts are commonplace when utilized by those seeking to delay a trial. It is also contended that counsel's expression of concern regarding petitioner's mental capacity evidenced his incompetence. A lawyer's expression of doubt with respect to his client's competency is a factor to be considered. Drope, 420 U.S. at 177 n. 13. However, counsel's "naked suggestion that the defendant may be incompetent" does not mandate a competency hearing. Jordan v. Wainwright, 457 F.2d 338, 339 (5th Cir.1972). We also note that counsel made no further mention of the competency issue. In Owens v. Sowders, 661 F.2d 584, 586 (6th Cir.1981), this court observed that "[i]t seems highly unlikely that counsel sensitive to [his client's competency] would not have complained further had [his client] been unable to understand the proceedings or participate in his defense."
 
 
 28
 Under the totality of the circumstances presented to the trial judge, we cannot say that in the face of the reports in his possession, and after an opportunity to personally observe petitioner, the judge should have harbored a doubt as to petitioner's competence. The record simply lacks substantial evidence that petitioner was incompetent at the time of trial. Accordingly, we conclude that the district court correctly determined that petitioner's due process rights were not violated by the trial court's failure to sua sponte order a competency hearing.
 
 III
 
 29
 We next consider whether the admission of petitioner's post-arrest request for counsel violated his constitutional rights. Petitioner complains that the trial court's failure to exclude references of his post-arrest, post-Miranda silence and request for counsel denied him due process of law and his privilege against self-incrimination. Miranda warnings carry an implicit assurance "that silence will carry no penalty," and thus, a defendant's post-arrest, post-Miranda silence may not be used for impeachment purposes. Doyle v. Ohio, 426 U.S. 610, 618-619 (1976). Nor may a defendant's post-Miranda warning silence be used as evidence of that party's sanity. Wainwright v. Greenfield, 474 U.S. 284, 295 (1986). These principles hold true for a request to remain silent until an attorney has been consulted. Id. at 295 n. 13. Accordingly, failure to exclude the testimony of Dr. Johnson with respect to petitioner's silence until an attorney could be consulted was repugnant to the assurances implicit in the Miranda warnings he received. However, it does not necessarily follow that the error in this regard was prejudicial.
 
 
 30
 This Circuit has recognized on several occasions that a Doyle violation may amount to harmless error. See, e.g., Tuggle v. Seabold, 806 F.2d 87, 93 (6th Cir.1986); Martin v. Foltz, 773 F.2d 711, 715 (6th Cir.1985), cert. denied, 478 U.S. 1021 (1986). "The test for harmless constitutional error is whether a court is 'able to declare a belief that it was harmless beyond a reasonable doubt.' " Tuggle, 807 F.2d at 93 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).
 
 
 31
 We initially note the context in which the error arose. Under Kentucky law, petitioner bore the burden of establishing by a preponderance of the evidence that, as the result of mental disease or defect, he was not responsible for criminal conduct. Ky.Rev.Stat.Ann. Sec. 504.020; Ball v. Commonwealth, 81 Ky. 662, 664 (1884). That burden remained with petitioner and never shifted to the prosecution. Wainscott v. Commonwealth, 562 S.W.2d 628, 631 (Ky.), cert. denied, 439 U.S. 868 (1978). There was no dispute concerning whether petitioner committed the killing; he admitted that at trial.
 
 
 32
 In support of his insanity defense, petitioner proffered one expert witness, Dr. Meyers, who testified that petitioner had substantial capacity at the time of the murder to distinguish right from wrong. Dr. Meyers' further testimony, that petitioner lacked substantial capacity to conform his conduct to the requirements of the law at the time of the murder, was equivocal at best. In rebuttal, Dr. Johnson testified that, in his opinion, petitioner was capable of conforming his conduct to the requirements of the law at the time of the murder, as well as appreciating the criminality of his conduct.
 
 
 33
 Dr. Johnson's testimony was founded upon three permissible evidentiary bases, and one impermissible one. It was when Dr. Johnson's bases for his conclusion were elicited that the objectional comment went into evidence. Admission of the tainted testimony, and consideration of its prejudicial effect, must be viewed in the context of the ultimate issue before the jury--petitioner's mental condition at the time he indisputably committed the acts. We therefore are not concerned with whether petitioner was prejudiced by the jury's being able to infer from his silence that he killed the victim. The district court correctly characterized the statement as cumulative, in the sense that the other bases articulated by Dr. Johnson were more than adequate to ground his opinion on petitioner's sanity; the omission of the tainted basis hardly renders his opinion less persuasive.
 
 
 34
 Accordingly, since petitioner's killing of the victim was not in dispute, we are unable to say that admission of the improper statement so tipped the scale that there was a reasonable probability that it contributed to petitioner's conviction. Chapman, 386 U.S. at 24. The purpose of the harmless error concept is to "block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." Id. at 22. We conclude that the admission evidence of petitioner's post-arrest, post-Miranda silence and request for an attorney constituted harmless constitutional error beyond a reasonable doubt.
 
 IV.
 
 35
 For the foregoing reasons, the district court's order denying petitioner's writ of habeas corpus is hereby affirmed.
 
 
 36
 LIVELY, Circuit Judge, dissenting.
 
 
 37
 I agree with the majority that the state trial court did not err in failing to order a competency hearing prior to trial. I also agree that the trial court committed constitutional error in permitting a psychiatrist called by the Commonwealth to use Baldwin's silence and request for an attorney after receiving Miranda warnings as evidence of his sanity. However, I do not agree with the majority's conclusion that this Fourteenth Amendment violation constituted harmless error.
 
 
 38
 In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held that the trial court denied the defendants due process by allowing the prosecution to use the defendant's silence after receiving Miranda warnings to impeach the defendants' exculpatory testimony. The majority appears to base its harmless error determination primarily on the fact that Baldwin admitted the killing. The majority states that since the killing was admitted the court is "not concerned with whether petitioner was prejudiced by the jury's being able to infer from his silence that he killed the victim." This reasoning overlooks the fact that Baldwin's only defense was insanity, and the jury was asked to infer from his silence that he was sane. This inference would surely prejudice Baldwin.
 
 
 39
 The majority's reasoning adopts an argument that the Supreme Court rejected in Wainwright v. Greenfield, 474 U.S. 284 (1986), albeit in determining whether there had been a violation rather than testing for harmlessness. In Greenfield, the Florida Attorney General argued that the Doyle due process rationale does not control where silence is relied upon to prove sanity rather than to prove commission of the underlying offense. In rejecting this argument, the Court stated:
 
 
 40
 We find no warrant for the claimed distinction in the reasoning of Doyle and of subsequent cases. The point of the Doyle holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.
 
 
 41
 474 U.S. at 292. The Court went on to state, "What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." Id. at 295. This statement must mean that any evidentiary use of the information is forbidden. The prosecution cannot use such statements to establish that the accused committed the underlying offense. The constitutional violation, however, is just as clear when the information is used to undermine a defense. Here it was used to rebut the only defense.
 
 
 42
 In the context of this case, I cannot view the violation as harmless error. It seems to me that none of the other reasons given by Dr. Johnson for concluding that Baldwin was sane would have been nearly as persuasive with the jury as the fact that Baldwin, after being informed of his constitutional right to remain silent and to have an attorney, chose to exercise that right. I am unable "to declare a belief that [the constitutional error in this case] was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967).
 
 
 43
 I would reverse the judgment of the district court and direct entry of the writ unless the Commonwealth grants Baldwin a new trial within a reasonable time.
 
 
 44
 * * *
 
 
 45
 * * *
 
 
 
 [1]
 504.020 Mental disease or defect
 (1) A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.
 (2) As used in this chapter, the term "mental disease or defect" does not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.
 (3) A defendant may prove mental disease or defect, as used in this section, in exculpation of criminal conduct.
 
 
 [2]
 Q. [H]ave you formed an opinion ... whether or not [petitioner] could conform his conduct to the requirements of the law?
 A. Well I think this case I think the evidence to be quite frank with you is very mixed. I think there is evidence in both directions....
 Q. If you were forced to give an opinion you had to say oneway [sic] or the other whether or not on that day he could conform his conduct with the conformance of the law what would your opinion be?
 A. Well I have said I would find it very mixed but based on his history of psychosis and homophobic delusions I would lean toward viewing the fact that he could not conform his behavior, that he could not resist the impulse.
 
 
 [3]
 First, Dr. Johnson concluded that because petitioner attempted to hide the weapon before the murder, he must have had a "clear idea" of what he intended to do. The second factor--and in Dr. Johnson's opinion, the strongest--was the "policeman-at-the-elbow rule," which posits that if a party would not have committed a crime in the presence of others, then he was not acting under an irresistible impulse. Petitioner had told Dr. Johnson that he would not have committed the murder had he known others were present. The third factor was that petitioner offered no resistance to arrest. The final factor was that petitioner would not make a statement until he consulted an attorney