46 F.3d 1132
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael Anthony WELLS, Petitioner-Appellant,
v.
Denise QUARLES, Respondent-Appellee.
 No. 91-2135.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1994.
 
 Before: RYAN, NORRIS, and KRUPANSKY, Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Michael Anthony Wells appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. Sec. 2254. Currently serving a term in the Michigan penal system, petitioner argues that his 1983 guilty plea to criminal sexual conduct was obtained as the result of ineffective assistance of both trial and appellate counsel.
 
 
 2
 The district court denied the petition because it concluded that petitioner had failed to demonstrate the cause and prejudice necessary to overcome the preclusive effect of his procedural default in state court of his claim that he had received ineffective assistance of counsel. We agree that the writ should not issue, although our reasoning differs from that of the district court.
 
 I.
 
 3
 Petitioner was arrested and charged with first degree criminal sexual conduct for a rape that occurred on December 28, 1982. He stood trial in the Circuit Court of Washtenaw County, Michigan, the following July. On the second day of trial, shortly after the victim testified, petitioner decided to plead guilty.
 
 
 4
 After telling the judge that there had been no plea agreement, that he understood the consequences of his change of heart, and that his decision was voluntary, petitioner recounted the events that constituted the offense. He and a friend, who were "still getting over the Christmas spirit and everything," picked up a female hitchhiker on the evening in question. They drove around "partying"--smoking marijuana and drinking rum. Both men eventually forced the passenger to have sex with them. As petitioner told the trial judge, "She didn't exactly consent to it."
 
 
 5
 Petitioner was sentenced on November 10. The judge characterized the case in the following terms: "This was a very bad rape case. A gun was used. The woman was hit in the face and she had to run from the car as there were death threats." Although he declined to impose the recommended sentence of thirty-five to sixty years, the judge did sentence petitioner to seventeen to fifty years of imprisonment.
 
 
 6
 Before trial, defense counsel attempted to withdraw from the case. Among the reasons he cited was that he had not received full payment for his services. In a supporting affidavit, he indicated that "said Defendant appears, also, to be incompetent to assist counsel with his trial, and a forensic examination may be required before any counsel can proceed for and on his behalf." The trial court denied permission to withdraw, and counsel represented petitioner through sentencing. Counsel did not formally request a competency hearing for his client; nor did he raise the possibility of an insanity defense.
 
 
 7
 Trial counsel was replaced on appeal. Petitioner contends that he asked his new counsel to raise ineffective assistance on direct appeal, but that he refused to do so. In support of his position, petitioner points to letters dated March 28 and April 27, 1984, that request appellate counsel to raise ineffective assistance of counsel and to challenge the voluntariness of the guilty plea. In response, counsel sent petitioner a letter dated May 3, 1984. Without further elaboration, this letter states, "I do not believe the issues you wished raised have any merit."[1]
 
 
 8
 On October 16, 1984, the Michigan court of appeals affirmed the conviction. People v. Wells, 138 Mich.App. 450, 360 N.W.2d 219 (1984). The sole issue addressed by the court concerned the trial judge's comment concerning possible probation. Petitioner did not appeal this decision to the Michigan Supreme Court.
 
 
 9
 Approximately two years later, petitioner retained new counsel and moved for a new trial, citing as grounds his incompetency to stand trial and his having received ineffective assistance of counsel. On March 18, 1987, the same judge who had presided over the plea hearing denied the motion. The trial court dismissed the ineffective assistance of counsel argument because petitioner had failed to raise it on direct appeal. Subsequent appeals in the state system were summarily denied.
 
 
 10
 On December 21, 1988, petitioner began the habeas proceedings that culminated in this appeal.
 
 II.
 
 11
 When, as here, a petitioner procedurally defaults in a state court system by failing to raise a federal constitutional claim, the general rule is that the procedural default bars federal habeas review unless the petitioner can establish cause for the procedural default and prejudice attributable thereto. Wainwright v. Sykes, 433 U.S. 72, 87 (1977). The Supreme Court has offered this guidance for determining when counsel's deficient performance constitutes cause for procedural default:
 
 
 12
 [T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.
 
 
 13
 ....
 
 
 14
 We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, supra, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule....
 
 
 15
 ... [I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not "conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance." Ineffective assistance of counsel, then, is cause for a procedural default. However, ... the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default....
 
 
 16
 Murray v. Carrier, 477 U.S. 478, 486-89 (1986) (citation omitted).
 
 
 17
 Trial counsel's concern with payment of his fee and appellate counsel's alleged "deception"[2] fall far short of the types of "external" factors that the Court envisioned. Id. at 488 (listing counsel's reasonable ignorance of the basis for a claim or interference by officials as examples of viable external causes). Under the circumstances of this case, the only possible cause for the procedural default is ineffective assistance of counsel. Petitioner must establish that his appellate counsel provided ineffective assistance by failing to argue that petitioner received ineffective assistance of trial counsel.
 
 
 18
 Petitioner must first show that his counsel's performance fell below an objective standard of reasonableness, i.e., that his representation was so poor that he failed to function as counsel for Sixth Amendment purposes. Second, petitioner must demonstrate a reasonable probability that this inadequate representation changed the outcome of the proceedings. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); see also Hill v. Lockhart, 474 U.S. 52, 56-58 (1985) (extending Strickland analysis to convictions obtained by plea).
 
 
 19
 Petitioner contends that trial counsel should have realized that competency was an issue from petitioner's failure to appear for a pretrial conference due to hospitalization, from talking to petitioner and his family, and from review of hospital records. By failing to address trial counsel's performance, the state appears to concede that it fell below acceptable norms.
 
 
 20
 The performance of appellate counsel presents a closer question. There is no constitutional right to demand that appointed counsel press issues on appeal if counsel has determined, in his or her professional opinion, that they have no merit. Jones v. Barnes, 463 U.S. 745, 751 (1983); United States v. Perry, 908 F.2d 56, 59 (6th Cir.), cert. denied, 498 U.S. 1002 (1990) (such decisions properly left to discretion of counsel).
 
 
 21
 This professional discretion, however, is not without limits. In this case, petitioner alerted appellate counsel to the possibility that his representation at trial had been inadequate and, in a letter to petitioner, appellate counsel replied, "I do not believe the issues you wished raised have any merit." While this response implies that counsel had looked into the claim of ineffective representation at trial, even a cursory review of the proceedings below would have revealed to a reasonably competent attorney the strength of the competency claim, and of the merits of petitioner's contention that trial counsel should have raised it.
 
 
 22
 Accordingly, based upon the record, we are satisfied that petitioner has established the first prong of Strickland by showing that his representation at trial and on direct appeal was deficient. Strickland, 466 U.S. at 687.
 
 
 23
 Our inquiry does not end there, however, since petitioner must also demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In the context of a guilty plea, this second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. at 59.
 
 
 24
 After careful review of the record before us, paying particular attention to the transcript of the change of plea hearing, we are unable to conclude that the shortcomings of trial counsel affected the outcome of the plea process. The record reveals that during that process the trial judge conducted a lengthy conversation with petitioner and carefully questioned him. Petitioner described in detail the events leading up to his being charged and advised the court of the reasons he decided to plead guilty. The trial judge then accepted the plea, saying that, "It appears to be voluntarily and understandingly made with the knowledge of the nature of the accusation and is accurate." The district court concluded that the record supported a finding that petitioner was competent to enter a guilty plea:
 
 
 25
 Petitioner admitted that on the day of trial he read the entire police report regarding his case. Prior to the plea, Petitioner engaged in a "very extensive consultation" with defense counsel, Petitioner's wife, grandmother and grandfather. Most importantly, Petitioner offered a cogent and thorough recitation of the events of the rape. He related how he and a co-defendant, who he referred to by name, raped a woman in their car after Petitioner split her lip with a blow.
 
 
 26
 We agree with the district court, that petitioner has not satisfied the second prong of the Strickland test. Because he has not demonstrated that counsel was ineffective, he has not established cause for his procedural default.
 
 
 27
 Petitioner also argues that he was denied due process because the trial court should have spotted the potential competency problem and sua sponte ordered a hearing on the issue. He cites Pate v. Smith, 637 F.2d 1068, 1071 (6th Cir.1981), to support his contention: "[W]here there is substantial evidence of a defendant's incompetence at the time of trial a trial judge has the duty to order a hearing sua sponte."
 
 
 28
 While the trial court undeniably has some duty to monitor a defendant's competency, see Drope v. Missouri, 420 U.S. 162, 181-82 (1975), the facts of this case do not support a finding that the court neglected its duty. As we have already noted, the transcript of the plea hearing reveals no irregularities.
 
 III.
 
 29
 For the foregoing reasons, the district court's order denying petitioner his request for a writ of habeas corpus is affirmed.
 
 
 30
 RYAN, Circuit Judge, dissenting.
 
 
 31
 I must respectfully dissent.
 
 
 32
 The majority opinion correctly concludes that Well's appellate counsel was ineffective within the meaning of the cause prong of Strickland, but then incorrectly concludes that Wells was not prejudiced within the meaning of the prejudice prong of Strickland. If Wells's trial counsel's professional performance had been minimally competent, which the majority concedes it was not, the state trial court would have been presented with a motion for a competency hearing, the factual basis for which would have been the following:
 
 
 33
 . Wells's grandmother had stated that Wells had been suffering from a major depression since 1979.
 
 
 34
 . In 1980, Wells was hospitalized after he tried to commit suicide by attempting to shoot himself in the head. At that time, he was diagnosed with a personality disorder, possibly schizophrenia.
 
 
 35
 . Wells was committed to a mental institution from April 10 to 25, 1983.
 
 
 36
 . On May 1, 1983, Wells returned to the psychiatric hospital after attempting to commit suicide a second time, this time by a drug overdose. During this stay in the hospital, Wells missed a pretrial hearing, which had been scheduled for May 5, 1983.
 
 
 37
 . After Wells was released, he was arrested for breaking and entering. While in jail, Wells attempted to hang himself and was sent back to the mental institution. Well's attorney in the breaking and entering case requested a competency hearing on July 5, which the court in that case granted the next day.
 
 
 38
 . Hospital records indicate that Wells was taking psychotropic drugs, and was also suffering from drug and alcohol abuse.
 
 
 39
 Under the prejudice component of Strickland, the question, then, is whether the trial court's knowledge of those facts would have "affected" the outcome of the plea proceeding. Hill v. Lockhart, 474 U.S. at 59. The Court in Lockhart stated that "affected" in this context means that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. Lockhart was concerned, of course, with ineffectiveness in the context of a guilty plea; its rationale is no less applicable to counsel's error in failing to request a competency hearing. I do not read Lockhart to require this court to be able to say that the trial court would have found the defendant incompetent to offer a guilty plea, but only that the court would have ordered a competency hearing.
 
 
 40
 The state says that we can cut through all of this and simply find that the "outcome" would not have been affected, whether there had been a competency hearing or not, because the trial court questioned the defendant and found him competent to plead guilty. That, of course, begs the question. If the defendant was not mentally competent to plead guilty, telling the judge that he was, would not make it so. If it did so, states could dispense with competency hearings for defendants who may be mentally incompetent to plead guilty and merely leave it to the plea-taking judge to decide competency based upon what the defendant says. The majority seems, implicitly at least, to accept this view, but I conclude that Pate v. Robinson, 383 U.S. 375 (1966), rejects it. In Pate, the Court held that when evidence of a defendant's mental state raises a doubt as to his competence, due process requires a competency hearing. The Court explicitly rejected the argument that a defendant's apparent lucidity at trial could overcome the need for a competency hearing.
 
 
 41
 I am satisfied that if a competent defense counsel had brought to the state trial court's attention what we now know--and what counsel then knew or should have known-about Wells's history, the court would have ordered a competency hearing. In my view, the district court's finding that the trial counsel's failure to raise the issue of defendant's competence did not prejudice Wells is pure speculation, unsupported by the record. I think the prejudice prong of Strickland has been satisfied.
 
 
 42
 I would reverse.
 
 
 
 [1]
 We note that the record in this case is in disarray and it is impossible to say with any certainty whether these letters have been properly made part of the record. The district court denied a motion to supplement the record filed November 8, 1991, which makes specific mention of this correspondence. Despite this denial, however, the district court order currently before us on appeal specifically cites the letter dated May 3, 1984
 Because the district court apparently considered this correspondence, we resolve the ambiguity of the record's contents in favor of petitioner. At the same time we deny petitioner's pending motion to supplement the record further.
 
 
 [2]
 It is difficult to understand the precise nature of petitioner's cause argument with respect to appellate counsel. Although he contends that the letters exchanged between them allegedly show "outright deception," our reading of their contents fails to support this characterization