**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph Kent COLBERT, Defendant–Appellant.**

**No. 00–1481.**

United States Court of Appeals, Sixth Circuit.

Feb. 12, 2002.

Before KENNEDY and DAUGHTREY, Circuit Judges; and BELL,* District Judge.

KENNEDY, Circuit Judge.

Defendant appeals his convictions for two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). Defendant was convicted after a jury trial at which he represented himself. Defendant contends that the district court failed to conduct necessary inquiries to determine whether he was competent to waive his right to counsel and whether he fully understood the dangers of doing so. Defendant also challenges the sufficiency of the evidence. We affirm.

I.

When viewed in the light most favorable to the government, the evidence produced at trial established the following facts. On April 8, 1999, Colbert entered a Michigan National Bank in Detroit, approached a bank teller's window, and gave the teller a note reading:

PLACE THE 100–50–20 DOLLAR BILL INSIDE THE APPROPRIATE ENVELOPE. DON'T ATTEMPT TO GIVE ME ANY DUMMY OR DYE PACKS.

When the teller did not comply quickly enough for Colbert, he pointed or referred to the bank manager while revealing the butt of a gun inside his waistband. The teller gave Colbert $312 out of her drawer. At trial, the teller identified Colbert as the person who robbed the Michigan National Bank on April 8, 1999.

On April 9, 1999, Colbert entered a Comerica bank in Detroit, approached a bank teller, and gave the teller a note reading:

PLACE THE MONEY INSIDE
AN ENVELOPE

Colbert's hands remained in his coat pockets. The teller, believing that Colbert was armed, placed $3,103 and a dye pack in an envelope and gave it to Colbert. Prior to trial, the Comerica teller selected Colbert from a police lineup as the person who robbed her on April 9, 1999. At trial, the teller identified Colbert as the person who robbed the bank that day.

As Colbert ran from Comerica bank on foot, an off-duty police officer noticed a red substance coming out from beneath Colbert's jacket. The officer observed Colbert entering a vehicle occupied by a female seated in the passenger seat. The officer followed the car to a McDonald's restaurant, and called 911 from outside the restaurant. Uniformed police officers arrived at the scene and arrested Colbert. At trial, the off-duty officer identified Colbert as the person he followed from the bank on April 9, 1999.

When the uniformed officers arrived, Colbert, referring to the female passenger, exclaimed, "she had nothing to do with it—it's all on me." (J.A. at 351.) A search of the car uncovered the following evidence: (1) assorted bills stained with red dye inside Colbert's pants pocket, (2) a dye-stained $50 bill on the driver seat of the car; (3) an envelope with red dye-stained money in the trunk of the vehicle; and (4)

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

a black jacket stained with red dye in the trunk of the vehicle. (J.A. at 351–54.) A comparison of the dye-stained money with photocopies of the bills wrapped around the dye pack by Comerica security confirmed that the bills were taken from Comerica bank.

Colbert, in two written statements, confessed to both robberies. When presented with the demand notes used in the robberies, Colbert acknowledged using the notes in the robberies by signing both notes. Colbert also acknowledged that he was identified in a bank surveillance photograph of the April 8 robbery by signing the back of the photograph.

An attorney from the Federal Defender's office was appointed to represent Colbert. Colbert was indicted on two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). He entered a plea of not guilty as to both counts. At Colbert's request, the court allowed him to be psychologically examined in preparation for an insanity defense. The court also ordered a second psychological examination of Colbert, directing that a written report be given to the court. Colbert filed with the court notice of his intent to rely on the insanity defense. After the results of the tests were obtained and Colbert was informed of the second expert's opinion regarding sanity, he concluded that insanity was not a viable defense. Thus, at a hearing on Colbert's request to proceed pro se, he formally withdrew his insanity defense. (J.A. at 267–68, 274, 300–02.)

Colbert, without acting through his appointed counsel, filed a Motion to Proceed Pro Se. The court struck that motion from the record because it had been improperly submitted. Defense counsel then filed a Motion to Allow Defense Counsel to Withdraw and to Allow Defendant to Proceed Pro Se. The court held a hearing, at which time it granted the motion in large part—permitting Colbert to proceed pro se, but requiring appointed counsel to act as standby counsel.

Colbert's case was tried to a jury, and he was convicted on both counts of bank robbery. During and after trial, Colbert filed several motions on his own behalf, including a Motion to Dismiss Charges for Lack of Jurisdiction, a Motion for New Trial, and two motions for reconsideration, all of which were denied. Colbert appeals his conviction.

## II.

■ Colbert's appeal raises four separate issues. First, whether the district court conducted a proper inquiry to determine whether Colbert fully understood the dangers of proceeding pro se, such that his waiver of the right to counsel was knowing and voluntary. Second, whether the district court erred by not holding an evidentiary hearing to determine whether Colbert was competent to waive his right to counsel. Third, whether there was sufficient evidence for the jury to find beyond a reasonable doubt that Colbert participated in the bank robberies. Fourth, whether Colbert's actions during the second robbery were sufficient to meet the required element of intimidation in the bank robbery statute. We reject each of Colbert's arguments.

Colbert's first contention is that he did not knowingly and voluntarily waive his right to counsel because the district court did not conduct a proper inquiry to determine whether Colbert fully understood the difficulties and dangers of representing himself. The Supreme Court recognized the constitutional right of a defendant to represent himself in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the waiver of the right to counsel must be knowingly and intelli-

gently made. *See Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *United States v. McDowell*, 814 F.2d 245, 248 (6th Cir.1987). The question of what type of record is needed to show that a waiver was knowingly and intelligently made was addressed by the Sixth Circuit in *United States v. McCaskill*, 585 F.2d 189 (6th Cir.1978) (per curium). There, the court examined the record as a whole and concluded that the defendant chose to represent himself "with eyes open." *Id.* at 190. The Sixth Circuit again addressed this issue in *McDowell*. There, the court went beyond the *McCaskill* test, invoking its supervisory powers in an express attempt to avoid appeals such as this one, and set forth a procedure to be followed when a defendant asks to represent himself. The *McDowell* court directed district judges to use the model inquiry set forth in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed.1986), or an inquiry covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel. 814 F.2d at 249–50. The model inquiry was provided in an appendix to the *McDowell* opinion. 814 F.2d at 251–52.

The court will not reproduce in the text of this opinion the model inquiry or the lengthy portion of the hearing transcript in which the district judge conducted the model inquiry. It is sufficient to say that the district judge adhered quite closely to the model inquiry, and made a finding on the record that Colbert had knowingly and intelligently waived his right to counsel. (J.A. at 282–91). In fact, the district court went beyond the model questions in the *Bench Book*, inquiring about the specifics of Colbert's educational background and professional experience. This questioning

revealed that Colbert had a bachelor's degree in business management and had also received some paralegal training. Finally, the district court appointed standby counsel for Colbert, as advised by the *Bench Book*. The *McDowell* court did not expressly hold that in every case where a district judge has conducted the model inquiry and made a finding on the record, it necessarily follows that the defendant's waiver was, in fact, knowing and voluntary. It implied as much, however, by indicating that it offered the model inquiry "in order to avoid future appeals of a similar nature." *McDowell*, 814 F.2d at 249. Because the district judge conducted the model inquiry and made a finding on the record that Colbert's waiver was knowing and voluntary, Colbert's first argument fails.

Colbert's second argument is that the district court failed to make a determination as to whether Colbert was competent to waive his right to counsel and conduct his own defense. Colbert contends that before permitting a defendant to proceed pro se, a district court must determine whether the defendant is competent to decide the issue of self-representation. In *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court clarified the standard for competency necessary to waive counsel. The Court held that the level of competency necessary to waive the right to counsel is the same as the level of competency required to stand trial. *Id.* at 391, 113 S.Ct. 2680. That standard, set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) is whether the defendant has "a rational as well as factual understanding of the proceedings against him."[1] The *Godinez*

1. The Court emphasized that this relatively low level of competency was appropriate because "the competence that is required of a defendant seeking to waive his right to coun-

Court stated that this competency determination was essentially a prerequisite to a finding of knowing and voluntary waiver.[2] Although the two inquiries are distinct, a separate competency determination is not necessary in every case in which a defendant seeks to represent himself. The Court explained in a footnote:

> We do not mean to suggest, of course, that a court is required to make a competency determination in every case in which a defendant seeks to ... waive his right to counsel. As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence.

*Id.* at 402, n. 13, 113 S.Ct. 2680.

The question of when there is "reason to doubt" the defendant's competence was addressed in *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), a case referenced in footnote 13 of *Godinez.* There, the court stated:

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by

the varying opinions trained psychiatrists can entertain on the same facts. *Id.* at 180, 95 S.Ct. 896. The Sixth Circuit has instructed that the proper standard of review in these cases is "Whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir.1983) (quoting *Pate v. Smith,* 637 F.2d 1068, 1072 (6th Cir.1981)).

Here, a careful examination of the record reveals absolutely no reason to doubt the defendant's competence. The only arguable basis for the district judge to question Colbert's competence was Colbert's initial indication that he would pursue an insanity defense. But at the hearing on the defense's Motion to Allow Defendant to Proceed Pro Se, which was conducted after the results of the second psychological examination were made known to the court, Colbert withdrew his insanity defense, stating that it was "not a viable defense" in light of those results. (J.A. at 267–68, 274, 300–02.) Moreover, there was no indication that Colbert had been behaving irrationally. Colbert's courtroom demeanor clearly suggested that he was competent to waive his right to counsel. A reading of the hearing transcript, including Colbert's statements to the court and responses to the court's questions, leads us to conclude that a reasonable district judge would have had no reason to question Colbert's lucidity, even though insanity was raised as a potential defense earlier in the

---

sel is the competence to *waive the right,* not the competence to represent himself." *Godinez,* 509 U.S. at 399, 113 S.Ct. 2680.

**2.** That is, the court must first conclude that the defendant meets the low *Dusky* standard for competence, and then must determine whether the waiver of his right to counsel was

knowing and voluntary, which is a more difficult standard to meet. "In this sense there *is* a 'heightened' standard ... for waiving the right to counsel, [as compared to simply standing trial], but it is not a heightened standard of *competence." Godinez,* 509 U.S. at 400–01, 113 S.Ct. 2680.

proceedings. The district judge stated on the record that he thought that Colbert to be "a man of intelligence who states his thoughts understandably." (J.A. at 290.) The judge even said, "It's difficult for me to imagine somebody who's better prepared [to represent himself], other than perhaps some defendant with a law degree and trial experience." (J.A. at 290.) The district judge was obviously confident that Colbert understood the nature of the proceedings. Based on Colbert's statements during the hearing and the district judge's observations, it is clear that a reasonable judge, situated as was the district judge here, would have experienced no doubt with respect to Colbert's competency to stand trial or to waive his right to counsel. We therefore reject Colbert's second argument. Moreover, the court had the court ordered psychiatric report on defendant's competency to stand trial. Defendant does not suggest that anything in that report indicates any mental incompetency.

■ Colbert's third argument is that the jury's guilty verdict was not supported by substantial evidence. Colbert summarily asserts that the prosecution "failed to prove that he participated in the bank robberies." (Appellant's Brief at 16.) This argument is obviously frivolous. On appeal, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Here, both of the bank tellers, as well as the off-duty police officer, identified Colbert in court. One of the tellers picked Colbert out of a police

line up prior to trial. Colbert confessed to the crimes and signed his name on the back of the demand notes indicating that he used them during the robberies. He also signed the back of a surveillance photograph of him taken at the time of the robberies, acknowledging that he was pictured in the photograph. There was also testimony that dye-stained bills from the second robbery were found in Colbert's pants pocket and in the car that he was driving. Certainly a reasonable trier of fact could conclude from this evidence that Colbert was involved in the bank robberies.

■ At oral argument, Colbert's counsel focused the court's attention on a fourth issue—whether Colbert's actions in the second robbery were sufficient to meet the element of intimidation in the bank robbery statute. The statute provides, in relevant part:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take ... any property or money or any other thing of value belonging to ... any bank, credit union, or any savings and loan association ... Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). Colbert argues that merely approaching a teller and handing her a note, while otherwise keeping his hands in his pockets, is not enough to meet the requirement of intimidation.[3]

In *United States v. Robinson*, the Sixth Circuit clarified that intimidation does not necessarily require the display of a weapon, the verbal or nonverbal "hint" of a weapon, or an explicit threat to do bodily harm. 527 F.2d 1170, 1172 (1975). Rath-

---

**3.** The government has not argued, and the indictment did not allege, that Colbert's act of taking money from the teller was "by force and violence." Therefore, in order to estab-

lish that Colbert violated § 2113(a), the government must prove that Colbert's taking of the money was "by intimidation."

er, the test is whether a jury could reasonably conclude from the evidence offered at trial that an ordinary person in the teller's position and under the circumstances presented would reasonably be in fear of bodily harm. *Id.* In Robinson, no express threat was made, and no "hint" of a weapon was given. Instead, the defendant kept his hands on the counter, visible to the teller, and verbally demanded all of the teller's money. The defendant in *Robinson* was wearing a black leather coat, which the court noted could be used to conceal a weapon, and waited in line at the bank "somewhat nervously."

The evidence in this case is sufficient to support a finding of intimidation. The Comerica teller who was the victim of the second robbery testified that Colbert was wearing a black jacket and had his hands in his pockets, "in the side of his coat." (J.A. at 328.) The teller also testified that Colbert told her to "hurry up" and put the money in an envelope. (J.A. at 327.) These facts are even more indicative of intimidation than the facts in *Robinson*. Not only was Colbert wearing a jacket in which he could have concealed a weapon, but his hands were also in the pockets of his jacket, and thus were not visible to the teller. *See United States v. Smith*, No. 92–6311, 1993 WL 303359, at *1 (6th Cir. Aug.9, 1993) (unpublished disposition) (finding facts regarding intimidation stronger than in *Robinson* because defendant kept one hand hidden from the teller's view). Given the situation, Colbert's verbal demand that the teller "hurry up" could also be interpreted by a reasonable person as suggesting a further threat of bodily harm if the teller failed to quickly comply with the orders. In light of the holding in *Robinson*, we conclude that there was ample evidence from which a reasonable jury could have found intimidation.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.