Kevin MOTEN, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Knoxville.

April 18, 1996.

Permission to Appeal Denied by Supreme Court Sept. 16, 1996.

Michael L. Acuff, Chattanooga, for Appellant.

Charles W. Burson, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney General, Criminal Justice Division, Nashville, William H. Cox, III, District Attorney General, C. Leland Davis, David Denny, Asst. District Attorneys General, Chattanooga, for Appellee.

## OPINION

HAYES, Judge.

██ The appellant, Kevin Moten,[1] appeals the dismissal of his petition for post-conviction relief. The appellant is currently incarcerated in the Department of Correction pursuant to his pleas of guilty in the Criminal Court of Hamilton County to first degree murder and especially aggravated robbery. The appellant presents the following two issues for our consideration.[2] He contends that, at the guilty plea hearing, the trial court failed to adequately determine under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), and Tenn. R.Crim.P. 11(c) that the appellant understood his constitutional rights and the consequences of his guilty pleas. Specifically, the appellant asserts that the trial court did not ascertain that the appellant understood his privilege against compulsory self-incrimination. Additionally, the appellant claims that he, in fact, did not understand his right to remain silent at trial, and he did not understand that, by pleading guilty, he was waiving all issues for the purpose of appeal, other than the transfer of his case from juvenile court to criminal court, an issue he preserved under Tenn.R.Crim.P. 37(b)(2).[3] He argues that, had he fully understood his constitutional rights and the consequences of his guilty pleas, he would not have pled guilty.

1. We note that while the pleadings before this court indicate that the spelling of the appellant's name is "Moten," the appellant's signature on the *pro se* petition for post-conviction relief reflects the spelling "Moton." Moreover, on direct appeal, this court used the spelling "Moton."

2. The appellant's amended petition also alleged ineffective assistance of trial counsel. However, at the evidentiary hearing, against the advice of his post-conviction attorney, the appellant stated that he was satisfied with his representation at all stages of the proceedings and "didn't want ineffective assistance of counsel to be in this petition."

3. The State argues that the appellant's alleged ignorance with respect to the waiver of issues for the purpose of appeal does not constitute a proper ground for post-conviction relief. However, in *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn.1993) (citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) and *Brown v. Perini*, 718 F.2d 784,

After a review of the record, we affirm the judgment of the post-conviction court.

### I. Factual Background

On January 15, 1991, the appellant pled guilty to the December 21, 1989, robbery and murder of the manager of a fast food restaurant. On direct appeal, this court summarized the facts:

> The evidence, including the confession of the appellant, . . . shows this appellant and another seventeen-year old planned a robbery of the restaurant where they worked. The scheme was to seize the manager outside the restaurant after working hours and force her to re-enter the restaurant and open the safe. The first attempt was aborted because the manager did not follow the customary routine when leaving the restaurant.
>
> On the night of this offense, the appellant and the other seventeen-year old seized the manager as planned, forced her back into the restaurant and made her open the safe. They took the money and then killed the manager by plunging a knife into her throat.[4]

*State v. Moton*, No. 03C01–9104–CR–00129, 1992 WL 19270 (Tenn.Crim.App. At Knoxville), *perm. to appeal denied*, (Tenn.1992). On appeal, this court affirmed the appellant's conviction.[5] *Id.* The appellant then filed a

788 (6th Cir.1983)), our supreme court observed that a defendant's ignorance of the direct consequences of his guilty plea will affect the constitutional validity of the plea under *Boykin*. Thus, to the extent that the waiver of issues for the purpose of appeal is a direct consequence of a guilty plea, then ignorance thereof is a proper subject of post-conviction review. In any event, we conclude that the appellant was aware of this consequence, direct or otherwise, when he entered his guilty pleas.

4. Both the appellant and his codefendant claimed that the other was the principal participant. However, the appellant admitted to the police that he broke the handle off the knife lodged in the victim's throat.

5. Although the appellant only preserved for appeal the issue of whether the appellant's transfer from juvenile court to criminal court was proper, this court, in affirming the judgments of conviction, also concluded that the appellant's confession was admissible.

*pro se* petition for post-conviction relief on December 21, 1992. The post-conviction court appointed counsel on January 14, 1993.[6] An amended petition was filed on January 13, 1994. An evidentiary hearing was held on November 16, 1994. The post-conviction court entered an order dismissing the appellant's petition on the same day.

At the evidentiary hearing, the appellant testified that he was eighteen years old when he pled guilty to the instant offenses. At the time of the offenses, he was in the eleventh grade. According to the appellant, most of his classes were special education classes, and he maintained a "C" average. He conceded that he had advanced normally through the school system from the eighth grade until the eleventh grade. He also stated that, while incarcerated, he was working toward a GED. Moreover, he was participating in courses designed to teach building trades.

The appellant further testified that, at the guilty plea hearing, he felt "[a] little bit, you know, out of control." He explained that he didn't feel in control of his life and he didn't understand what was happening at the hearing. Specifically, he testified that he didn't understand his right to remain silent at trial. According to the appellant, he believed "that whatever [he] knew that [he] had to tell it to the courts or anyone else." He also didn't understand that he was waiving all grounds for appeal other than the transfer of his case from juvenile court to criminal court. He asserted that if he had fully understood the trial court at the guilty plea proceeding, he would not have pled guilty.

The appellant also testified that, at the time of his guilty plea, he was aware that his codefendant had told the police that the appellant was involved in the murder. Moreover, he was aware that his codefendant was willing to testify against the appellant at trial.

Finally, the appellant testified that he had participated in two hearings in juvenile court prior to the guilty plea hearing. He was assisted by counsel at both hearings. He did not testify. He stated that he didn't remem-

ber whether his decision not to testify was one he discussed with counsel. He then stated that, with respect to both juvenile court and criminal court proceedings, he never discussed with counsel whether or not he would testify. However, the appellant also asserted that he had no complaints concerning his representation. Indeed, according to the appellant's post-conviction attorney, the appellant was "really adamant about that."

The appellant's trial counsel, Hiram Hill, also testified at the post-conviction hearing. He is an assistant public defender in Chattanooga. At the time he became involved in the instant case, Mr. Hill had been practicing law for twelve or thirteen years. He had represented "many hundreds" of criminal defendants. He was assisted in his representation of the appellant by co-counsel, Donna Miller.

With respect to the appellant's intelligence, Mr. Hill observed that the appellant is "somewhat intellectually limited." Yet, he also stated:

> There were issues as to competency but there were problems with that thought in that [the appellant] had done apparently pretty well throughout school. I do realize a lot of that was because his mother paid such close attention to him and had tutors for him and that sort of thing. The assertion that all of his classes were special ed[ucation] I don't think is accurate. As I recall it, ... the bulk of his classes were in fact mainstream classes with some special ed[ucation]. His grades were above average if a two point is average. As I recall, his grades were basically B's and C's.

Hill further testified that, during the course of the hearings in juvenile court, "Mr. Moten was aware that he didn't have to testify and I'm sure that I did tell him that it's better that he not testify...." On the day of the guilty plea hearing, the appellant never indicated to counsel that he was experiencing any confusion. Hill stated, "[I]f there had been in my mind a question that Mr. Moten didn't understand anything, I would have explained it to him on the spot...." Hill asserted that, prior to the

6. This attorney, Kenneth Lawson, was replaced by Michael Acuff on March 9, 1994.

guilty plea hearing, he and Ms. Miller spent a considerable amount of time talking with the appellant about his case.

At the post-conviction hearing, the appellant also submitted the transcript of Dr. Fred Wright's testimony during the juvenile court proceedings. Dr. Wright, a licensed psychologist, was hired by the appellant's mother to evaluate the appellant. Dr. Wright testified that he performed several tests on the appellant, including the Wechsler Adult Intelligence Scale, the Curtis Sentence Completion Test, and the "MMPI." He opined that the appellant has an I.Q. of 75, which reflects borderline retardation. He also concluded that the appellant has a mental age of ten. Wright placed the appellant in the 25th percentile of the population with respect to logic and abstract reasoning. He placed the appellant in the 5th percentile of the population with respect to vocabulary. Finally, he placed the appellant in the 1st percentile of the population with respect to general information and general comprehension. Wright asserted that the appellant would be unable to understand constitutional rights, because the words and concepts are too difficult. He also opined that people of this level of intelligence could be more easily manipulated. On cross-examination, Wright conceded that his evaluation of the appellant was inconsistent with the appellant's academic record. According to Wright, the appellant's record indicates that the appellant received A's and B's in high school. Moreover, Wright stated that he spent no more than three hours with the appellant.[7] A colleague also spent approximately three hours with the appellant.

At the conclusion of the post-conviction hearing, the court entered the following findings:

> [T]he main thrust of the defendant's complaint is that he didn't understand the right to remain silent ... and perhaps peripherally some other lack of understanding ...
>
> The petitioner here today exhibited a good understanding of the proceeding going on,

the proceeding here and seemed to have the ability to grasp legal concepts. He, of course, has had this penitentiary experience which is broadening in that respect and is older but he showed an ability to ... When the Attorney General suggested that his education was matriculating right along, while he later testified that he didn't know what that word meant and I think that's probably correct, he grasped well what the Attorney General was asking him. He knew that the Attorney General was asking him if he were not moving right along with his graduation from one grade to the other and the record shows that he did move from one grade to the other, which doesn't have a lot of probative value in this age of social promotion but it did show that he had a grasp of what the Attorney General was asking ... and showed that he had a good grasp of the questions. He was fairly articulate. It's my judgment that he has the capacity to understand these things. I think that the evidence here today belies to some extent the testimony of Dr. Wright ...

> It is my judgment that he has a greater capacity than was indicated by the testimony of Dr. Wright.... [Additionally,] at the end of the colloquy between [the appellant] and Judge Meyer, which of course was mainly from Judge Meyer advising him of these rights ... Judge Meyer came back and asked Mr. Moten if he had any questions about any of the things they had discussed and [the appellant] answered no ...

> It is my judgment that the guilty plea was voluntary and understanding and that there was a factual basis for it ...

## II. Analysis

The appellant does *not* contend that the trial court at the guilty plea hearing failed to recite his constitutional rights or state the consequences of his guilty pleas as required by *Boykin*, 395 U.S. at 242–243, 89 S.Ct. at 1712, *Mackey*, 553 S.W.2d at 341, and Rule 11, Tenn.R.Crim.P. *See also State v. Neal*,

---

7. At some point prior to the guilty pleas, Dr. Wright interviewed the appellant because he had attempted suicide.

810 S.W.2d 131, 135–137 (Tenn.1991).[8] Rather the appellant contends that the trial court failed to elicit responses from the appellant sufficient to establish that the appellant's pleas of guilty were knowing and voluntary, i.e. "made with knowledge of the 'relevant circumstances and likely consequences.'" *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 511 U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994).

In *Chamberlain v. State,* 815 S.W.2d 534, 540 (Tenn.Crim.App.1990), *perm. to appeal denied,* (Tenn.1991), we observed that the nature and extent of the colloquy between the trial court and the defendant, that must appear on the face of the transcript before the court can accept the defendant's plea, is unclear. However, we have also held that "the record must reflect both the advice litany by the trial court *and* some affirmative indication that the defendant understood his rights and the ramifications of his guilty plea thereon."[9] *Goodrum v. State,* No. 1196, 1991 WL 138507 (Tenn.Crim.App. At Knoxville, July 30, 1991), *perm. to appeal denied,* (Tenn.1992); *Beeler v. State,* No. 01C01–9010–CR–00265, 1991 WL 181034 (Tenn. Crim.App. At Nashville, September 16, 1991) (Tipton, J., concurring). In other words, the advice litany alone is insufficient. We relied in *Goodrum* upon our supreme court's comments in *Neal,* 810 S.W.2d at 131–132 (emphasis added), concerning the simultaneous entry of guilty pleas by multiple defendants:

> It is substantial compliance if the entire litany of rights and other required explanatory information is communicated in open court ... in the presence of their respective attorneys, so long as the number involved is not so great as to make individual understanding unlikely; *and provided that each defendant is addressed individually to establish on the record the understanding and agreement of each defendant.*

*See also State v. McClintock,* 732 S.W.2d 268, 273 (Tenn.1987) ("[e]very court is required to make adequate personal inquiry of defen-

dants to assure the validity of all necessary waivers ... [t]he taking of criminal pleas cannot be reduced to a rote administrative proceeding").

The appellant argues that his limited intellectual capacity imposed a heavier burden upon the trial court to investigate the knowing and voluntary nature of the appellant's pleas. In support of this argument, the appellant cites *United States v. Masthers,* 539 F.2d 721, 728–729 (D.C.Cir.1976). However, in *Masthers,* the appellant claimed that he was incompetent at the time his plea was entered. Thus, in this case, the appellant seems to confuse the issue of whether his pleas were knowing and voluntary with the issue of whether he was competent to plead guilty. Those two inquiries are not the same. *See, e.g., Godinez v. Moran,* 509 U.S. 389, 399–401, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993). In *Godinez,* the United States Supreme Court explained:

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced.

*Id.* at 401 n. 12, 113 S.Ct. at 2687–2688 n. 12 (citations omitted).

■ Assuming that the appellant is arguing that he was incompetent to enter his guilty pleas, defense counsel did not raise the issue of competency at the guilty plea hearing. Nevertheless, this court has observed:

> When it is believed that an accused is incompetent to stand trial or waive his or her rights, it is the duty of the court to conduct a hearing for the purpose of inquiring into the competence of the accused, and, where warranted, ordering a psychiatric examination and evaluation of the ac-

---

8. We note that the trial court did omit certain instructions mandated by *Mackey* and Rule 11. However, these omissions do not rise to the level of constitutional error and cannot be addressed in post-conviction proceedings. *Neal,* 810 S.W.2d at 137.

9. Our use of the term "advice litany" does not mean that "'any predetermined ritualistic form' or a 'particular litany'" is required. *Chamberlain,* 815 S.W.2d at 540.

cused. This duty exists even in the absence of a motion seeking such a hearing. *Berndt v. State*, 733 S.W.2d 119, 122 (Tenn. Crim.App.1987). *See also* Tenn.Code Ann. § 33–7–301(a) (1995 Supp.). Failure to order a hearing when the evidence raises a sufficient doubt as to an accused's competence to stand trial or enter a guilty plea deprives the accused of due process of law. *United States v. White*, 887 F.2d 705, 709 (6th Cir.1989); *Pate v. Smith*, 637 F.2d 1068, 1071 (6th Cir. 1981) (citing *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975) and *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966)).

 Considering the facts before the trial court at the guilty plea hearing, *Berndt*, 733 S.W.2d at 122 (citing *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir.), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 287 (1983)), we conclude that a court exercising reasonable caution would not have experienced doubt with respect to the appellant's competence to enter guilty pleas. *Id.* (citing *Pate*, 637 F.2d at 1072).[10] The only evidence before the trial court that arguably cast doubt upon the appellant's competence was the testimony of Dr. Wright during the juvenile court proceedings.[11] However, while Dr. Wright opined that the appellant possessed an I.Q. reflecting borderline retardation and a mental age of ten, the psychologist conceded that his conclusions were contradicted by the appellant's academic record. Indeed, other than Dr. Wright's testimony, there is nothing in the record that would have alerted the trial court that the appellant's level of intellectual functioning is subnormal. For example, in addition to attending high school, the appellant was employed at the time of the murder. Moreover, the appellant at the guilty plea hearing exhibited no difficulty understanding the proceeding.

The appellant was responsive to the court's questions. The appellant was also represented by competent counsel who were aware of Dr. Wright's testimony and had "put in hundreds of hours actually" talking to the appellant about his case.

> The constitutional obligation to hold an evidentiary hearing depends heavily on the factual circumstances of each case. Neither the defendant's medical history, nor the opinion of psychiatric experts, nor the defendant's behavior ... should be viewed in isolation. These are merely relevant factors to be considered in determining whether an evidentiary hearing is necessary.

*Bordenkircher*, 696 F.2d at 466 n. 1. *See also Clark v. State*, 800 S.W.2d 500, 505–506 (Tenn.Crim.App.1990) (fact that the appellant had been declared to be mentally ill in 1973 would not necessarily require further investigation by the trial court, *sua sponte*, of the appellant's mental capacity to enter pleas of guilty in 1975).

 Furthermore, at the conclusion of the evidentiary hearing, the post-conviction court found that the appellant was capable of understanding his rights in the context of a guilty plea proceeding and was capable of waiving those rights. In reviewing post-conviction proceedings, the factual findings of the trial court are conclusive on appeal unless the evidence preponderates against such findings. *Davis v. State*, 912 S.W.2d 689, 697 (Tenn.1995); *Cooper v. State*, 849 S.W.2d 744, 746 (Tenn.1993); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn.1990). We conclude that the record supports the trial court's findings.

In addition to those facts already mentioned which contradict Dr. Wright's evaluation of the appellant's mental capacity, the

---

**10.** Contrary to the court's opinion in *Masthers*, 539 F.2d at 726, the standard for determining the competence of an accused to plead guilty is the same standard applied in determining the competence of an accused to stand trial, i.e., the capacity to understand the nature and object of the proceedings, consult with counsel, and assist in the preparation of his or her defense. *Godinez*, 509 U.S. at 397–399, 113 S.Ct. at 2686; *Berndt*, 733 S.W.2d at 123. *See also State v. Benton*, 759 S.W.2d 427, 429 (Tenn.Crim.App.

1988); *Mackey v. State*, 537 S.W.2d 704, 707 (Tenn.Crim.App.1975), *perm. to appeal denied*, (Tenn.1976).

**11.** At the guilty plea hearing, defense counsel was apparently unsure whether the transcript from the juvenile court proceedings had been included in the record. Nevertheless, we assume that the transcript and information contained therein were before the court.

transcript of the post-conviction proceeding reveals that, while in prison, the appellant has worked toward a GED and participated in vocational courses. At the post-conviction proceeding, the appellant exhibited no difficulty in understanding the proceeding and testifying in a fairly articulate manner. Mr. Hill, an experienced criminal trial attorney, testified at the post-conviction proceeding that, in his opinion, the appellant was competent when he entered his guilty pleas. *See Scharkley v. State*, No. 01C01–9003–CR–00074, 1990 WL 198877 (Tenn.Crim.App. At Nashville, December 12, 1990) ("while [the accused's] mental development was indicated to be 'slow,' a fact recognized by his attorneys, there is no indication that the appellant was mentally incompetent when he entered the plea in question").

■ Finally, in the context of the above discussion, we conclude that the trial court's elicitation of responses from the appellant was sufficient to establish that the pleas were knowing and voluntary under *Boykin, Mackey,* and Rule 11. *Blankenship*, 858 S.W.2d at 905 n. 7; *Neal*, 810 S.W.2d at 139. The trial court advised the appellant of his rights and the consequences of his guilty pleas, including the appellant's privilege against self-incrimination and his waiver of grounds for appeal other than the transfer of his case from juvenile court to criminal court. While the court did not elicit a response following his description of each individual right, notably the privilege against self-incrimination, the court asked the appellant whether his attorneys had spoken with him "often enough and long enough to answer any questions [he] might have." Indeed, the court specifically asked the appellant if his attorneys had "talked with [him] about whether or not [he] would take the stand in [his] own behalf." When the appellant responded affirmatively, the trial court stated, "Okay. And, of course, I would imagine they would wait until the State had rested their case before they would actually make a decision on whether or not you would testify, and, again, they can only advise you, you would be the one who would have to make that decision." As mentioned earlier, the court confirmed that the appellant's attorneys had "put in hundreds of hours ... talking to [the appellant]." The

trial court established that the appellant was satisfied with the representation he had received. Moreover, the court determined that the appellant's attorneys had spoken with members of the appellant's family. These family members, in turn, discussed with the appellant his decision to plead guilty. Finally, the court asked the appellant two times if he had any questions about the proceeding. The appellant responded that he did not.

Thus, there was no error, and the burden of proof does not shift to the State to prove harmless error beyond a reasonable doubt. *Neal*, 810 S.W.2d at 139–140. *See also Adkins v. State*, 911 S.W.2d 334, 348 (Tenn.Crim.App.1994), *perm. to appeal denied*, (Tenn.1995). *But see Johnson v. State*, 834 S.W.2d 922, 926 (Tenn.1992) (the supreme court only required the State to show *by clear and convincing evidence* that the pleas were, in fact, knowing and voluntary). In any event, the entire record shows beyond a reasonable doubt that the pleas were knowing and voluntary. *Id.* In making this determination, we may consider any relevant evidence in the record of the proceedings, including post-conviction proceedings. *State v. Turner*, 919 S.W.2d 346 (Tenn.Crim.App. at Nashville, 1995), *perm. to appeal denied*, (Tenn.1996) (citing *Cochran v. Norvell*, 446 F.2d 61, 63 (6th Cir.1971)).

> [A] court charged with determining whether ... pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904. Again, we have concluded that the transcript of the guilty plea hearing affirmatively establishes the validity of the appellant's pleas. However, even assuming that it does not, the transcript strongly suggests that the pleas were

knowing and voluntary. Additionally, at the time of the guilty plea proceeding, the appellant had been in jail for approximately one year. The appellant had previously participated in two hearings in juvenile court. Hill testified that, prior to those hearings, he had discussed with the appellant the advisability of testifying in court. Moreover, he and Ms. Miller conferred with their client "on a very regular basis." Mr. Hill expressed his opinion that, had the appellant chosen to undergo a trial by jury, the State would have presented a strong case and the appellant would have been subject to a much harsher penalty. Finally, the record contradicts the testimony of Dr. Wright concerning the appellant's intellectual capacity.

Accordingly, the decision of the trial court, denying the appellant's petition for post-conviction relief, is affirmed.

BARKER and SMITH, JJ., concur.