IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 12, 2000 Session

## ROSS GUNTER v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for McMinn County**
**No. 98-556     Carroll L. Ross, Judge**

**No. E2000-00747-CCA-R3-CD**
**April 10, 2001**

The petitioner, Ross Gunter, pled guilty in the McMinn County Criminal Court to second degree murder and was ordered to serve one hundred percent (100%) of his fifteen year sentence in confinement. The petitioner filed a petition for post-conviction relief alleging fault in the plea agreement, and the post-conviction court denied relief. On appeal, the petitioner raises the following issues for our review: (1) whether the post-conviction court erred in not granting the petition for post-conviction relief based on the State's breach of the plea agreement, and (2) whether the post-conviction court erred in not granting the petition for post-conviction relief because the petitioner did not knowingly and voluntarily enter a guilty plea. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

J. Allen Murphy, Jr. (post-conviction), and William C. Donaldson (trial), Athens, Tennessee, for the appellant, Ross Gunter.

Paul G. Summers, Attorney General and Reporter, Peter M. Coughlan, Assistant Attorney General, Jerry N. Estes, District Attorney General, Dan Cole and William Reedy, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On December 1, 1997, in the McMinn County Criminal Court, the petitioner, Ross Gunter, entered a best interest guilty plea to second degree murder.[1] The transcript of the guilty plea hearing reflects that the petitioner pled guilty to second degree murder and received a sentence of fifteen years incarceration in the Tennessee Department of Correction, which would be served one hundred percent (100%) in confinement. At the guilty plea hearing, defense counsel requested that the trial court recommend that the petitioner serve his sentence in a mental health facility instead of a penal institution. The trial court agreed to make such a recommendation but advised the petitioner that he could not guarantee that the petitioner would be placed in a mental health facility because the determination regarding the petitioner's placement rested with the Tennessee Department of Correction. After the guilty plea hearing, a judgment of conviction was entered. The original judgment correctly reflected the recommendation of defense counsel, the State, and the trial court that the petitioner serve his sentence in a mental health facility. Subsequently, however, the trial court entered an order noting that the original judgment erroneously reflected that the petitioner would serve thirty percent (30%) of his sentence in incarceration before becoming eligible for parole. The order required the appellant to serve one hundred percent (100%) of his sentence in confinement.

The petitioner filed a petition for post-conviction relief alleging that, on the day of the guilty plea hearing, the State breached the plea agreement by changing the plea agreement to require him to serve one hundred percent (100%) of his sentence in confinement instead of thirty percent (30%). The petitioner also contended that the State did not fulfill the plea agreement. As proof, the petitioner testified at the post-conviction hearing that he has been serving his sentence in a penal institution and not in a mental health facility. Additionally, the petitioner argued that he did not knowingly and voluntarily enter his guilty plea because, due to his diminished capacity, he did not understand the terms of the plea agreement as altered by the State on the day of his guilty plea hearing.

The post-conviction court denied the petitioner's petition for post-conviction relief, finding that the petitioner knowingly and voluntarily entered into a plea agreement which provided that the petitioner would serve one hundred percent (100%) of his sentence in confinement and that the trial court would *recommend* that the petitioner be placed in a mental health facility. On appeal, the petitioner raises the following issues for our review: (1) whether the post-conviction court erred in not granting post-conviction relief based on the State's breach of the plea agreement, and (2) whether the post-conviction court erred in not granting post-conviction relief because the petitioner did not knowingly and voluntarily enter a guilty plea.

## II. Analysis

---

[1] See North Carolina v. Alford, 400 U.S. 25, 37-38, 95 S. Ct. 160, 167-168 (1970). A best interest guilty plea may be entered by a petitioner who wishes to plead guilty while maintaining his innocence. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985). The trial court may accept the best interest guilty plea as long as the trial court is satisfied that there is a factual basis for the plea. Id.

The petitioner bears the burden of proving all of the factual allegations in his post-conviction claim by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, this court may not re-weigh or reevaluate the evidence or substitute our inferences for those drawn by the post-conviction court. Owens v. State, 13 S.W.3d 742, 749 (Tenn. Crim. App. 1999), perm. to appeal denied, (Tenn.), cert. denied, __ U.S. __, 121 S. Ct. 116 (2000). In other words, the post-conviction court resolves all questions pertaining to the credibility of witnesses and the weight and value to be accorded to their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

### A. Plea Agreement

In arguing that the State breached the petitioner's guilty plea agreement, the petitioner contends that

> [t]he plea agreement not only set forth that the [petitioner] would only serve 30% of his 15 year sentence, but that he would also serve those years in a hospital suited for someone with his mental capacity.

The petitioner argues, based on State v. Howington, 907 S.W.2d 403 (Tenn. 1995), that a plea bargain must be considered under the law of contracts. Accordingly, the petitioner alleges that the State has breached the plea agreement because the petitioner is required to serve one hundred percent (100%) of his sentence in confinement instead of thirty percent (30%) and because he has been assigned to a penal institution instead of a mental health facility. We disagree with the petitioner's contention.

It is of some note that, in his brief, the petitioner consistently makes reference to the "plea form that [the petitioner] signed." The petitioner alleges that this "signed agreement" contains the provisions for the petitioner's parole eligibility upon service of thirty percent (30%) of his sentence and the trial court's recommendation to the Tennessee Department of Correction that the petitioner be assigned to a mental health facility. However, upon close inspection, we can find no such signed document in the record. Accordingly, as this document appears to be the basis of the petitioner's argument, and as the petitioner bears the burden of providing a complete record for our review of his issues, the petitioner has arguably waived this issue on appeal. State v. Draper, 800 S.W.2d 489, 492-493 (Tenn. Crim. App. 1990). Nonetheless, we choose to examine the petitioner's issue on the basis of the record before us.

The judgment of conviction is the only document in the record on appeal that notes the thirty percent (30%) release eligibility and the recommendation that the petitioner serve his sentence in a mental health facility. However, contrary to the petitioner's argument, this court has stated, "[a]lthough plea agreements between prosecutors and the criminally accused that are accepted by the trial court are treated as contracts, a judgment of conviction is not a contract, and principles of contract law do not apply." Brown v. State, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996) (citations omitted). Moreover, when there is a discrepancy between the transcript of a proceeding and the judgment, the disposition contained in the transcript controls. See State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985).

It is clear from the transcript of the guilty plea hearing that the erroneous judgment, reflecting that the petitioner was to serve thirty percent (30%) of his sentence in confinement before becoming eligible for parole, was drafted after the guilty plea hearing. During the hearing, the trial court repeatedly explained to the petitioner that the State would allow the petitioner to plead guilty to second degree murder and the petitioner would be required to serve one hundred percent (100%) of his fifteen year sentence in confinement. Each time the trial court asked the petitioner if he understood the terms of the plea, the petitioner affirmatively responded that he did. After considering the factual basis underlying the plea, the trial court approved the petitioner's best interest guilty plea.

Additionally, the transcript reflects a request by the petitioner's counsel that the trial court recommend that the petitioner serve his sentence in a mental health facility instead of in a penal institution. The trial court agreed to make such a recommendation. The petitioner contends that the State breached this provision of the plea agreement because he has been serving his sentence in a penal institution and not a mental health facility. However, the trial court clearly advised the petitioner that

> I [will] recommend and I will sign the judgment which the General
> is preparing that you be placed in a facility for people with
> diminished mental capacity, and we'll all sign on that and try to get
> you in the best place for you, but again, we cannot guarantee that.

The trial court recognized that, once the petitioner was assigned to the Tennessee Department of Correction, the Department would make the decision regarding the petitioner's placement. See Tenn. Code Ann. § 40-35-212(d) (1997); but see Tenn. Code Ann. § 33-5-305(a)(1)(B) (Supp. 1999). Defense counsel, the State, and the trial court recommended that the petitioner be placed in a mental health facility, but the recommendation was not followed by the Tennessee Department of Correction. Accordingly, we find that the State did not breach any part of the petitioner's plea agreement, and this issue is without merit. We note however that our ruling on this issue does not preclude the petitioner from pursuing any available administrative remedies to attempt to secure his transfer to a mental health facility within the Tennessee Department of Correction.

### B. Knowing and Voluntary Plea

The petitioner further contends that he did not knowingly and voluntarily plead guilty. Specifically, the petitioner alleges that

> [t]he [petitioner] was only aware of what he signed, [the agreement
> that he serve thirty percent (30%) of his sentence,] not that the second
> degree murder charge[] that he plead guilty to was punishable by 15
> years in prison, of which 100% was to be served.

Once again, we note that the record contains no proof of a prior plea agreement between the State and the petitioner.

In assessing the nature of the petitioner's best interest guilty plea, we note that the petitioner does not claim that the trial court failed to ascertain the petitioner's awareness of his constitutional rights or the consequences of his guilty plea. See Boykin v. Alabama, 395 U.S. 238,

242-243, 89 S. Ct. 1709, 1712 (1969); State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977); Tenn. R. Crim. P. 11(c). Furthermore, the record reflects that the trial court did substantially comply with the dictates of Mackey in advising the petitioner. See State v. Newsome, 778 S.W.2d 34, 37-38 (Tenn. 1989).

Moreover, the record is abundantly clear that the petitioner was repeatedly informed of the length of his sentence and the amount of the sentence that he was required to serve in confinement. The trial court questioned the petitioner on several occasions regarding his desire to plead guilty to second degree murder and to accept a sentence of fifteen years, one hundred percent (100%) of which he would serve in confinement. Each time, the petitioner assured the court that he understood the agreement and wanted to plead guilty. See Lesley Buford v. State, No. 03C01-9603-CR-00096, 1997 WL 184769, at *2 (Tenn. Crim. App. at Knoxville, April 17, 1997); Eric LaVaughn Anderson v. State, No. 03C01-9508-CR-00224, 1996 WL 397456, at *5 (Tenn. Crim. App. at Knoxville, July 15, 1996). As this court has stated,

> [t]he petitioner agreed to the sentence on the record. It can be conclusively determined from the record that the petitioner acknowledged his acceptance of [his] sentence.

Buford , No. 03C01-9603-CR-00096, 1997 WL 184769, at *2.

Furthermore, the petitioner's trial counsel testified that he advised the petitioner that he would be required to serve one hundred percent (100%) of his fifteen year sentence in confinement. See Anderson , No. 03C01-9508-CR-00224, 1996 WL 397456, at *5. Petitioner's trial counsel also testified at the post-conviction hearing that

> I think that's probably just a mistake [on the judgment reflecting 30% release eligibility], because there is a space for violent [offenders to serve] 100%, and second degree murder falls under that 100% rule.

See Jeffery Robinson v. State, No. 89-293-III, 1990 WL 44055, at *1 (Tenn. Crim. App. Nashville, April 18, 1990); see also Tenn. Code Ann. § 40-35-501(i)(1) and (2)(B) (1997). Thus, we find that the petitioner knowingly and voluntarily entered his guilty plea.

The petitioner also appears to argue that he was not competent to enter into a guilty plea. However, the petitioner concedes that he was evaluated and found competent to stand trial. See Freda Gail McMahan v. State, No. 03C01-9212-CR-00422, 1993 WL 455290, at *2 (Tenn. Crim. App. at Knoxville, November 5, 1993). Furthermore, there was no proof presented at the post-conviction hearing regarding the petitioner's incompetency. Moreover, the post-conviction court found that the petitioner intelligently responded to all questions posed at the guilty plea hearing. See Moten v. State, 935 S.W.2d 416, 422 (Tenn. Crim. App. 1996). Accordingly, we can not disagree with the post-conviction court that the petitioner was competent to enter his knowing and voluntary guilty plea.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE