IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2011 Session

## STATE OF TENNESSEE v. ANTHONY TODD GHORMLEY

**Direct Appeal from the Circuit Court for Blount County**
**No. C-17294     Jon Kerry Blackwood, Judge**

_____

**No. E2010-00634-CCA-R3-CD - Filed January 20, 2012**

_____

A Blount County jury convicted the Defendant-Appellant, Anthony Todd Ghormley, of two counts of attempted first degree murder, a Class A felony, one count of especially aggravated kidnapping, a Class A felony, two counts of especially aggravated burglary, a Class B felony, and three counts of aggravated assault, a Class C felony. He received an effective sentence of 105 years in the Tennessee Department of Correction. On appeal, Ghormley argues that the trial court erred by (1) refusing to hold a competency hearing or reset the trial date when Ghormley's competency to stand trial was questioned two weeks before trial, (2) allowing Ghormley to represent himself for several months during the pretrial proceedings, and (3) allowing the State to amend the indictment on the day trial began. Upon review, we conclude that the trial court erred in not holding a hearing to determine Ghormley's competency to stand trial. Accordingly, we reverse the denial of a competency hearing and remand for a hearing. As to the other claimed errors, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the Defendant-Appellant, Anthony Todd Ghormley.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Michael L. Flynn, District Attorney General; Ellen Berez and Clinton Frazier, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Background.** The proof at trial showed that on September 17, 2007, Ghormley and his wife, Karen Van Dyke, had an argument while they were at the home of Gaynell Head, Van Dyke's grandmother. Ghormley returned to his residence, and Van Dyke remained at Head's home, spending the night with Head and Candy Bussey, Van Dyke's cousin. Early in the morning of the next day, while the women were asleep, Ghormley returned to the home. He forced his way through the locked front door and attacked the three women. He struck them each repeatedly with a baseball bat and cut them with a knife. Van Dyke escaped by jumping out a window, and she called police from a neighbor's house. Bussey fled out the front door, which Ghormley had blocked with a chair to prevent entry into the house. When police arrived, Ghormley took Head hostage and locked himself in the bathroom. After a standoff that lasted several hours, Ghormley surrendered and was arrested.

The jury convicted Ghormley, as charged, of two counts of attempted first degree murder, one count of especially aggravated kidnapping, two counts of especially aggravated burglary, and three counts of aggravated assault. Ghormley filed a motion for new trial, which was denied. This timely appeal followed.

**I. Competency to Stand Trial.** Ghormley argues that the trial court erred by refusing to hold a competency hearing or to reset the trial date when defense counsel raised the question of Ghormley's competency to stand trial two weeks before trial started. He asserts that the trial court improperly based a finding of competency entirely on the trial court's observations of the defendant in the course of the pretrial process, despite other evidence that suggested Ghormley was incompetent to stand trial. The State responds that the trial court's determination of Ghormley's competency was proper, and that the refusal to reset the trial date was not an abuse of discretion. We agree with Ghormley that the trial court should have held a hearing to determine Ghormley's competency to stand trial.

Soon after the criminal process was initiated against Ghormley, the trial court ordered that he submit to an outpatient competency examination at Cherokee Mental Health Center. That facility informed the court by letter that it was unable to sufficiently determine Ghormley's competency and that an inpatient examination was necessary. The court then ordered Ghormley to submit to an inpatient competency examination at Middle Tennessee Mental Health Institute (MTMHI). On January 15, 2008, MTMHI informed the court of its findings:

> Mr. Ghormley's condition is such that he is capable of adequately assisting his attorney in a court of law. In making this determination, it was concluded that he does understand the nature of the pending legal matter against him and the consequences which may follow, and he is able to advise counsel and participate in his own defense.

. . . .

This is to advise the Court that the evaluation psychiatrist is of the opinion that it will be necessary for the defendant to take psychiatric medication in order for his psychiatric condition to remain sufficiently stable to continue to be competent to stand trial.

On September 4, 2009, approximately two weeks before trial began, Ghormley, through his attorney, informed the court that, while in custody awaiting trial, he had not received the psychiatric medication his doctors prescribed. Ghormley also testified that he had not received the medication. The court, based on its observations of Ghormley, rejected the proposition that he was incompetent to stand trial. Ghormley again raised the same concern by motion filed on September 14, 2009, the day before trial began, and requested an evaluation to determine Ghormley's competency to stand trial. Before jury selection began the next day, the trial court orally ruled that Ghormley was competent to stand trial and denied the motion:

As you are all aware, competency is an issue that addresses itself to the discretion – to the sound discretion or to the observation of the Trial Court. This Court's first involvement in this case was after the indictment in this case. [First counsel] had been appointed to represent the Defendant in this case. And I believe among the other first issues that this Court addressed after its designation dealt with a hearing in which one of the issues was [first counsel]'s motion to withdraw based upon a conflict perceived between [first counsel] and Mr. Ghormley.

One of the issues that came up at that hearing was eloquently presented by the Defendant, in which he . . . brought to [first counsel's] attention the delay that had been afforded him at the preliminary hearing. And he was taking issue with [first counsel]'s action or inactions regarding the delay in the preliminary hearing. Now, even at this initial stage, this shows that the Defendant was aware of the legal proceedings and time constraints that deals [sic] with preliminary hearings. In other words, he was showing or displaying a knowledge of the legal system.

The court provided other examples of Ghormley's awareness of his legal rights, his understanding of the criminal process, and his ability to assist counsel in his defense: he filed a complaint against counsel with the Court of the Judiciary, he asserted his rights to a speedy trial and to represent himself, he filed and argued many motions before the trial court, and he disputed with counsel over trial strategy. The court continued:

-3-

Now, a defendant is competent to stand trial if he has the capacity to understand the nature and object of the proceedings against him, consult with counsel, and to assist in preparing his defense. The Trial Court may use the Defendant's behavior and demeanor as well as any prior medical opinion in determining the competency. I have observed this Defendant for many months and I have not observed any behavior on his part that indicates that he is anything but competent to stand trial. . . .

It is the unequivocal opinion of this Court that the Defendant is competent to stand trial regardless of what any other medical record there is in the record. He has been found to be competent, even though it says he needs to take medication. At this point in this hearing and reviewing the entire file and record in this case, the Court rules that he is competent.

The case then proceeded to trial.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). The test applicable under the federal constitution in evaluating a defendant's mental competency to stand trial was set forth by the United States Supreme Court as:

whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him."

Id. (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)); see also State v. Black, 815 S.W.2d 166, 173-74 (Tenn. 1991) (acknowledging the adoption of the federal standard in Tennessee). However, everyone who has a mental problem is not mentally incompetent as a result. Wilcoxson v. State, 22 S.W.3d 289, 313 (Tenn. Crim. App. 1999) (citing Bouchillon v. Collins, 907 F.2d 589, 593 (5th Cir. 1990)). "Conversely, courts have acknowledged that, even if a criminal defendant has an intellectual understanding of the charges against him, he may be incompetent if his impaired sense of reality substantially undermines his judgment and prevents him from cooperating rationally with his lawyer." Id. (citing Lafferty v. Cook, 949 F.2d 1546, 1551 (10th Cir. 1991); United States v. Hemsi, 901 F.2d 293, 296 (2d Cir. 1990)).

This court has explained the circumstances under which a trial court should conduct a hearing to determine the defendant's competency to stand trial:

> When it is believed that an accused is incompetent to stand trial or waive his or her rights, it is the duty of the court to conduct a hearing for the purpose of inquiring into the competence of the accused, and, where warranted, ordering a psychiatric examination and evaluation of the accused. This duty exists even in the absence of a motion seeking such a hearing. Failure to order a hearing when the evidence raises a sufficient doubt as to an accused's competence to stand trial or enter a guilty plea deprives the accused of due process of law.

Moten v. State, 935 S.W.2d 416, 420-21 (Tenn. Crim. App. 1996) (internal citations omitted). This court reviews the denial of a competency hearing by considering "'[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'" Berndt v. State, 733 S.W.2d 119, 122 (Tenn. Crim. App. 1987) (quoting Pate v. Smith, 637 F.2d 1068, 1072 (6th Cir. 1981)). The United States Supreme Court has explained that multiple factors guide this inquiry:

> [E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Drope, 420 U.S. at 180.

In this case, the trial court declined to hold a competency hearing even though Ghormley raised the issue twice within the two weeks preceding trial. The court based this decision on its observations of Ghormley, as Ghormley represented himself for several months, filed numerous motions throughout the pendency of the trial, and assisted counsel by raising pertinent legal arguments. The court concluded that Ghormley's actions in asserting his rights and raising particular legal issues demonstrated his understandings of the proceedings and his ability to assist counsel in his defense. It further stated that this proof of Ghormley's competency was so strong as to contradict the MTMHI physicians' statement that Ghormley must be medicated to remain competent.

-5-

Upon our review of the record, we conclude that the evidence "raise[d] a sufficient doubt as to [the] accused's competence to stand trial." The trial court was correct to consider its observations of Ghormley's behavior. However, the court failed to sufficiently consider other relevant factors which should have called Ghormley's competency into question, such as the medical opinion concerning competency and evidence of irrational behavior. Primarily, the medical opinion that Ghormley required psychiatric medication to maintain his competency, combined with evidence that Ghormley had not received that medication for a prolonged period, raise sufficient doubt of his competency. Furthermore, the record includes hundreds of pages of handwritten motions filed by Ghormley, both while he was represented by counsel and while he represented himself. In these filings, Ghormley expressed, usually in language riddled with obscenities, belligerence toward almost everyone involved in the court system, including judges, prosecutors, law enforcement officers, and his defense attorneys. Additionally, he often complained to the trial court of conspiracies against him by the legal system and jail employees. Although the trial court considered these filings evidence of Ghormley's competency, it is unclear whether they represent irrational conduct indicative of mental illness or rather simply an offensive and combative nature inherent to Ghormley. In light of the medical opinion on competency, the evidence that Ghormley had not received medication, and Ghormley's many court filings, a reasonable judge should have experienced doubt as to Ghormley's competency to stand trial. The trial court therefore erred in failing to hold a competency hearing, and Ghormley was deprived of the due process of law as a result. Consequently, we remand to the trial court for a hearing to determine whether Ghormley was competent to stand trial in September 2009.

We note that the United States Supreme Court has doubted the feasibility of such retrospective competency hearings. See Drope, 420 U.S. at 183 (declining to order retrospective competency hearing based on "the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances"); Pate v. Robinson, 383 U.S. 375, 386-87 (1966) (similar); see also State v. Richard C. Taylor, No. M2005-01941-CCA-R3-DD, 2008 WL 624913, at *24-25 (Tenn. Crim. App., at Nashville, Mar. 7, 2008) (relying on Pate v. Robinson in granting a new trial). Importantly, these cases do not prohibit retrospective competency hearings. See Wilcoxson, 22 S.W.3d at 311-312 (discussing federal case law on the remedy of retrospective competency hearings after Pate v. Robinson and Drope). As a result, some courts have approved of such proceedings when the particular facts of the case are conducive to a retrospective determination. See, e.g., United States v. Duncan, 643 F.3d 1242, 1250 n.3 (9th Cir. 2011) (allowing retrospective competency hearing "when the record contains sufficient information upon which to base a reasonable psychiatric judgment" (quotation and citation omitted)); United States v. Bergman, 599 F.3d 1142, 1148-1149, 1149 n.2 (10th Cir. 2010) (considering retrospective competency hearings "disfavored" but acceptable when a "meaningful hearing" is possible); Smith, 637 F.2d at 1073 ("It is firmly established in this circuit that a retrospective determination may satisfy the

requirements of due process if it is based on evidence related to observations made or knowledge possessed at the time of trial."); Lokos v. Capps, 625 F.2d 1258, 1262 (5th Cir. 1980) (allowing for a retrospective competency hearing if the prosecution can persuade the court that "the tools of rational decision are now available," but otherwise requiring a new trial).

Under the facts of this case, a retrospective competency hearing should not pose significant practical difficulties. We contemplate that the hearing will consist of (1) the testimony of the physicians who examined Ghormley and their opinion as to the necessity of psychiatric medication to maintain competency, (2) the testimony of Ghormley himself, (3) the testimony of jail staff who interacted with Ghormley,[1] (4) the observations of the attorneys and the trial court, and (5) any other evidence the trial court deems relevant, including the testimony of others who may have interacted with Ghormley immediately before the time of trial. Cf. Smith, 625 F.2d at 1262 (stating that a retrospective determination is appropriate when the attorneys, trial judge, and psychiatrists would be available to testify concerning the defendant's competency). Although more than two years have elapsed since trial commenced, the time at which Ghormley's competency is in question, the passage of time alone should not make the retrospective determination impractical. In a variety of court proceedings, witnesses frequently are called upon to remember and testify to experiences that occurred at comparable periods in the past. Such was the case in Ghormley's trial, which occurred two years after his offenses. After the hearing, should the trial court determine that Ghormley was competent at the time of trial, the failure to hold a hearing is harmless error, see Tenn. R. App. P. 36(b), and the convictions stand. Should the trial court determine that Ghormley was not competent at the time of trial, however, the trial court must vacate the judgments and grant a new trial. See Smith, 625 F.2d at 1262.

**II. Pro Se Representation.** Ghormley argues that the trial court erred in allowing him to proceed pro se without first advising Ghormley of the right to counsel and conducting an inquiry to determine that the waiver of the right was knowing and intelligent. Ghormley asserts that this shortcoming was exacerbated by the fact that he was incompetent to waive his rights, as he was not receiving his psychiatric medication at the time he represented himself. He was prejudiced by the trial court's error, according to Ghormley, because the numerous pro se motions with obscene, offensive language "could have prejudiced the impartiality" of the trial court. The State responds that Ghormley waived this issue by not raising it first in his motion for new trial. The State also asserts that Ghormley explicitly

---

[1] At the hearing for Ghormley's motion for a new trial and over Ghormley's objection, the State interrupted its argument to offer testimony from a nurse practitioner at the Blount County jail. She testified that Ghormley refused to take his prescribed medications while he was there awaiting trial.

waived his right to counsel and that he was not prejudiced by his brief pro se representation because "he was [not] deprived of a substantive or procedur[al] right which cannot be regained." We agree with the State that Ghormley has waived this issue.

Throughout the course of the proceedings against him, Ghormley had three different appointed attorneys. However, he represented himself from September 2008 to December 2008, following his first counsel's withdrawal. During this time, he made dozens of filings with the court and argued a number of motions, including motions for the trial judge to recuse himself, for the preliminary hearing transcript, for investigative services funds, for a gag order, for a change of venue, and to quash the State's subpoena of medical records. He also challenged, in a hearing before the court, the adequacy of the jail's law library and other resources for him to prepare for trial. Eventually, Ghormley accepted the appointment of counsel, and he was represented through the remainder of the proceedings until trial in September 2009.

Ghormley has waived this issue because he did not raise it in his motion for a new trial. See Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."). Ghormley's failure to include this issue in his motion for a new trial results in waiver because, if found to be meritorious, it would result in a new trial, see, e.g., State v. Charles Phillip Maxwell, No. M2009-00467-CCA-R3-CD, 2011 WL 915670, at *1, 4 (Tenn. Crim. App., at Nashville, Mar. 16, 2011) (remanding for new trial when trial court failed to follow procedure for determining waiver or forfeiture of Sixth Amendment right to counsel).

Since Ghormley has waived this issue, we may only review it for plain error. See Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this court stated that in order for an error to be considered plain:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is unnecessary to consider each factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000). Furthermore, "'plain error' must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)). The recognition of plain error "should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Id.

We are unable to conclude that the trial court committed plain error. First, the record does not clearly establish what occurred in the trial court. The record suggests, contrary to Ghormley's assertion, that a hearing did in fact occur, as the trial court several times referenced a discussion with Ghormley of the ramifications of waiving the right to counsel. For example, immediately before trial as the court ruled on Ghormley's competency, it stated, "This Court engaged in a long colloquy with the Defendant to determine whether he had adequate knowledge of the legal system to proceed pro se." Also, during a motion hearing on September 11, 2008, in which Ghormley represented himself, the trial court stated, "I told you before that I don't think it's a good idea for you to act pro se. But I found that that's what you want to do, and I'm going to allow you to do that." Nevertheless, Ghormley did not include a transcript of the relevant hearing in the record. Without a transcript of the hearing when the trial court allowed Ghormley to proceed pro se, it is unclear whether the trial court properly observed the procedures for finding a waiver of the right to counsel and whether the waiver was knowing and intelligent. Second, assuming that such a hearing did not occur, consideration of the error is not necessary to do substantial justice because it did not affect the fairness or the outcome of his trial. Ghormley proceeded pro se for approximately three months of the two years his case was pending. During the nine months leading up to trial after this period of pro se representation, Ghormley was represented by appointed counsel. Counsel, had it been advantageous to Ghormley, could have renewed any motions that Ghormley filed while pro se or otherwise challenged any adverse rulings by the trial court. Moreover, allowing Ghormley to proceed pro se did not result in prejudice due to the offensive nature of his pro se filings, as Ghormley asserts on appeal. The record reflects that Ghormley made such handwritten filings even while represented by counsel, and any prejudice which may have resulted from the filings would have occurred whether he was allowed to represent himself. Ghormley, therefore, is not entitled to relief on this issue.

**III. Amendment of Indictment.** Ghormley argues that the trial court erred in permitting the State to amend the indictments on the day trial began because it resulted in his being tried on charges for which he did not have notice. The State responds that Ghormley waived this argument by failing to include it in his motion for a new trial. Alternatively, the State contends that the amendment was necessary to correct only a

typographical error and that the indictments provided sufficient notice of the charges for which Ghormley would be tried. We agree with the State.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In State v. Hill, the Tennessee Supreme Court explained that an indictment is valid if it contains sufficient information:

(1) to enable the accused to know the accusation to which answer is required,
(2) to furnish the court adequate basis for the entry of a proper judgment, and
(3) to protect the accused from double jeopardy.

954 S.W.2d 725, 727 (Tenn. 1997) (citing State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); State v. Smith, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

T.C.A. § 40-13-202 (2006); see also State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000) (stating that the "overriding purpose" of an indictment is to provide "notice to the accused"). The trial court may allow the State to amend an indictment, without the defendant's consent and before jeopardy has attached, "if no additional or different offense is charged and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. 7(b)(2).

Here, the count of the indictment charging Ghormley with attempted first degree murder provided:

THE GRAND JURORS of Blount County, Tennessee, duly impaneled and sworn, upon their oath, present that:

ANTHONY TODD GHORMLEY

on or about the 18th day of September, 2007, in Blount County, Tennessee and before the finding of this indictment intentionally, and with premeditation did attempt to kill Gaynell Head, in violation of Tennessee Code Annotated §39-

13-202 and Tennessee Code Annotated §39-13-101, and against the peace and dignity of the State of Tennessee.

Another count of the indictment was identical except it named Candy Bussey as the victim rather than Gaynell Head.

The day trial began, before the jury was sworn, the trial court allowed the State to amend the indictment to correct the statute number referring to criminal attempt. It changed the reference to section 39-13-101, which corresponds with the offense of assault, to section 39-12-101, the correct statute for criminal attempt.

We agree with the State that Ghormley waived this issue by not including it in his motion for a new trial. See Tenn. R. App. P. 3(e). Waiver notwithstanding, the record demonstrates that the amendment complied with the requirements of Tennessee Rule of Criminal Procedure 7(b)(2). Although Ghormley did not consent to the amendment, it occurred before the jury was sworn, the point at which jeopardy attaches in a jury trial. State v. Pennington, 952 S.W.2d 420, 422 (Tenn. 1997) (citing Crist v. Bretz, 437 U.S. 28, 35 (1978); Serfass v. United States, 420 U.S. 377, 388 (1975)). Additionally, the elements alleged in the indictment clearly correspond with the offense of attempted first degree murder rather than the offenses of murder and assault. As a result, no additional or different offense was charged in the amended indictment. Furthermore, no substantial right was prejudiced by the amendment of the indictments because even in their incorrect state, the indictments accomplished the "overriding purpose" of providing Ghormley with notice of the charges against him. See State v. Beal, 614 S.W.2d 77, 80 (Tenn. Crim. App. 1981) (holding that incorrect statutory reference in indictment was "an unintentional drafting error," the correction of which did not charge an additional or different offense or cause prejudice when the indictment charged the elements of the correct offense). Ghormley, therefore, is not entitled to relief on this issue.

## CONCLUSION

Upon review, we affirm the judgments of the trial court in part, reverse in part, and remand to the trial court for a hearing to determine whether Ghormley was competent to stand trial in September 2009.

_____
CAMILLE R. McMULLEN, JUDGE